Judge Ewing
delivered the Opinion of the Court.
On the 14th of March, 1815, L. Sanders drew a bill of exchange on Gfatz and Brothers of Philadelphia, for four thousand three hundred dollars, payable ninety days after sight, in favor of Higgins and Morrison, who endorsed it, for accommodation of Sanders, to Brugiér & Tessier* It was afterwards duly presented for acceptance, which was refused; and afterwards, at maturity* it was again presented for payment, and protested for non-payment, and afterwards paid, supra protest, by Grata and Brothers “for the honor of Morrison.” Morrison paid Gratz and Brothers, and having received from Sanders part of the amount; filed his bill in chancery against his joint irtdorser, Higgins, for the recovery of his proportion of the balance.
Morrison died, and the suit being revived in the name of his executor, a decree was obtained by him, fori two thousand and eight dollars; from which Higgins has appealed to this Court.
Five questions arise on this record, worthy of the consideration of this Court:—
1. Are the allegations of the bill such as to entitle the complainant to a decree?
2. If so, is due notice of protest for non-acceptance necessary, and if necessary, is it made out by proof?
3. Are the facts proven sufficient to constitute a waiver of notice, or an implied admission that due notice was given—such as will charge Higgins?
4. Was the conduct of Morrison, after the bill was taken up by him, such as to release Higgins from the payment of his proportion of the bill remaining unpaid?
Riil in chancery, by one joint indorser of a bill of exch. which he paid alter protest, against the other, for contribution: an omission to allege, as a distinct fact, that the bill was duly protested for non acceptance/'is not fatal; a general charge of indebtedness, with enough to show on what grounds, is sufficient. Even, at law ‘‘as. often held,) payee, v. drawer, or indorsees, indorser, may recover on a general count; so, no doubt, might a joint indorsei his associate.But the proof must be the same as under the most special clec’n*
And, 5. Is the decree proper as to the amount?
First. Although it is not specifically charged in the bill, that due notice of protest for non-acceptance was given to Higgins, yet there is enough ciiarged to express indebtedness on the part of Higgins to the complainant, for the one half of the amount of the bill, together with costs, interest and damages, and a claim on the part of the complainant, for that amount. These allegations are sufficient to apprize Higgins of the nature, character and amount of the claim set up against Inm, and to put him upon his defence. The charge of indebtedness and liability on the part of Higgins presupposes due notice of protest, as well as a performance of all those prerequisite incidents, necessary to constitute that liability. If notice be necessary, then indebtedness and liability could not exist without it, and must be regarded as included in the general charge.
Besides, it is said in Chitty on Bills, 377, in an action at lav/, that—“the count for money lent, it is said, is “ proper, in an action at the suit of the payee of a bill “ against the drawer, it being evidence of money lent “ by the payee to- the drawer. It is also proper, in an “ action at the suit of the indorsee against his immediate u indorser, on account of their privity.” The same principle is sustained by the Supreme Court of New York, in the case of Cruger v. Armstrong, 3 John, cas. 5; Arnold v. Crain, 8 John. Rep. 79; Pierce v. Crafts 12 John. Rep. 90. If, in those cases, the common money counts would answer, we cannot doubt, for the like reason that the money count would suffice in the case under consideration. It is certain that a more intimate privity exists between two joint indorsers, than in the above cases; and if one pays the whole amount of the bill, it may well be presumed, that he pays it for the joint benefit of both, and he may well sustain a money count, for so much money paid, laid out and expended, for the use of his co-indorser, as to the one half of the sum. Under these counts, all the incidents, necessary to a right of recovery, must be made out in proof, the same as if specially charged in the declaration.
Where a bill ia made payable of ter sight, a protest for non acceptance, Sf due notice to all parties, is indispensable, to make them liable; no one is bound who is not notified; and when a party is once exonerated, his liability cannot be revived without bis assent; even payment by his friend, for his honor subjects him to no legal liability. But the necessity of jiotice may be waived by the party entitled to it. And—
If, iu a court of law, this latitude be indulged, we cannot perceive the reason or propriety of adhering to the rigid technicality contended for by the counsel for the appellant, which is more calculated to entangle the rights of parties in a net, than to advance the substantial ends of justice.
The defendant was well apprized by the charges in the bill, of the nature of the claim set up against him, and cannot have been deluded, or taken by surprise.
Secondly. When a bill is payable after sight, we are satisfied, that, due notice of protest for non-acceptance, is-necessary to charge Morrison, or any of the indorsers; and if not duly given, no subsequent payment of the bill, supra protest, can make them liable. The liability of all the parties is fixed by its non-acceptance, provided due notice is given. But if it is not given, they are discharged from liability. Chilly on Bills, 234. And if once discharged, their liability cannot be resuscitated without their privity or consent, by the act of another, in paying the bill, supra protest. And though the payment shall be made for the honor of a particular indorser, that cannot make him liable even to the friend who makes it, if he was before released from responsibility, by the failure op the part of the holder to give due notice of protest for non-acceptance. Chitly on Bills, 242, 213—14.
Hence it is always proper for him who pays, supra protest, for the honor of an indorser, to be well advised before he makes the payment, that due notice has been given, and all the prerequisite steps, necessary to constitute a liability on the part of the indorsers whom he intends to charge, have been taken. The payer, supra protest, for the honor of an indorser, occupies the condition of the holder, and no better, as to the indorser for whose honor he* -pays, and all prior indorsers. Chitty on Bills, 330, 257.
We perceive no positive proof of notice to the indorsers, of the non-acceptance of the bill in this record. And unless there be circumstances amounting to implied notice, or a waiver of notice, a liability on the part of the indorsers, would not attach in favor of the orig *103 inul holder, nor in favor of the acceptors, or payers supra protest, nor perhaps, in favor of Morrison against Higgins, upon their joint indorsement. This brings us to the third question.
That a party waived his right to notice, or had notice, in fact, may be inferred by (a jury ■ from his acts—as from a promise to pay the bill, made with a knowledge of the laches; an application made to the holder, for time, fyc
In this case—an indorser, after protest for nonacceptance (uncertain how soon after,) was invited by the holder to provide for its payment at maturity, and said he would agree to do so, if his co-indorser would; he also called at the office of his co-indorser and de-. sired to see some securities given to him by the. drawer; in his answer in chancery, he does not set up and rely upon want of notice as a sufficient defence, and finally the bill had been taken up by his coindorser: held, that these facts justify the presumption that he either had legal notice, or waived it, and is liable to bis co indorsor for contribution.
Thirdly. The objection made by an indorser, to pay a dishonored bill, on the ground of want of notice, is stricti juris, and frequently does not meet the justice of the case. The want of it frequently works no injury to the indorser, and in many cases, it may have been given, directly or indirectly, and the holder of the bill be unable to prove it. It has, therefore, been well established by many English, as well as American decisions, that the promise to pay, or the payment of a dis_ honored bill, with knowledge of the laches of the holder, together with many other circumstances, may amount to an implied acknowledgment of notice, or a waiver of it. Chitty on Bills, from 248 to 252, and the note to the sama; Leffingwell v. White, 1 John. cas. 99; Bond v. Farnham, 5 Mass. Rep. 170; Hopley v. Dufresne, 15 East's Rep. 275; Donaldson v. Means, 4 Dall. Rep. 109; Person v. Hooker, 3 John. Rep. 68; 5 John. Rep. 248; Same, 375. And in the case of Hopley v. Dufresne, (15 East, 275,) it was decided, that after suit brought and declaration delivered, if the indorser apply to the holder for further time for payment, that was sufficient evidence to be left to the jury, from which they might infer a waiver of notice. So also, it has been decided, that when the indorser, upon the first application by the holder, promised to pay the bill, if he would call again wifth the account, and afterwards said, that he had not had regular notice, but, as the debt was justly due, he would pay it; that the first conversation, being a pronir ise to pay the.bill, was, prinia facie, an 'admission that the bill had been presented to the acceptor for payment in due time, and had been dishonored, and due notice given of it to the indorser, and superseded the necessity of other proof to satisfy those averments in the declaration; and that the second conversation, only limited the inference from the former, so far as the want of regular notice wrent, which objection, by the iast promise, was also waived. ,
*104 “So when the drawer of a foreign bill, being applied to for payment, said that his affairs were at that moment deranged, but that he would be glad to pay it, so soon as his accounts with his agent were cleared, it was decided, . ° ’ that it was unnecessary to prove the protest oi the bill,. and we would infer equally unnecessary to prove notice.” Lunde v. Robertson, 7 East, 234; Gibbon v. Coggon, 2 Campbell, 188.
In the case before the Court, it is proved by the deposition of Benjamin Norris, that the bill was duly presented for acceptance, and refused. It is also proven, by the first deposition of Robert Scott, taken in the life of Morrison, when he was clearly competent to give evidence, that some months after the return of the bill, Higgins, the defendant, called on him, and made enquiry about the notes, which had been left by Sanders, the drawer, with him, as the clerk of Morrison, as collateral security for said bill; that he wished to know of the witness, the sufficiency of said notes, and took a memorandum of them, and made no suggestion of a want of notice, or an intimation of his non-liability.
And it is proven by John S. Sneed, that the bill was purchased by his firm, of the Kentucky Insurance Company. That he received advice of its protest for nonacceptance, by due course of mail, and immediately called on Higgins and Morrison, and advised them of it. That his object in calling on them, was to say to them, that the firm was not desirous to be under the necessity of claiming damages in case the bill should return, and therefore should they provide payment, in any short lime after maturity, or assure him that they would do so, that he would direct the bill not to be returned, and Mr. Higgins expressed his willingness to do so, provided Colonel Morrison would. The latter declined giving any assurance.
The answer of Higgins does not expressly deny notice, but says that, owing to the lapse of time, he does not recollect to have received notice. Nor does he in, his answer, place his defence on the issue of not having received notice of protest for non-acceptance, or suggest that b,£ did not receive it; but places it upon altogether dif *105 ferent ground. All these facts and circumstances, taken in connection with the fact of payment of the bill by Morrison, a joint indorser, are such as to warrant this Court in presuming, that due notice was received, or that there was a waiver -of notice, so as to charge Higgins with bis proportion of the bill.
Owner of a bilí, advised of its non acceptance, mentions that fact to indorsers, suggests to them to 1 provide for its payment at maturity: held,that asto form, which is.not material— this was a sufficient notice.
-^0®, sufficientfoi-hotfe
It is questionable whether the advice given by Snead, of the dishonor of the bill, was not sufficient notice. If it were clear, that the advice was received in due time, and forthwith or in due time, given to Higgins, we should not doubt but that the notice was sufficient to charge Higgins. No particular form of notice is necessary, provided it be sufficient to apprize the indorser of the dishonor of the bill, so as to put him upon the arrangement of his business to meet the demand.
But if it be admitted, that the advice of Snead, who was interested in the bill, was not sufficient positive evidence of notice, it tends with other circumstances to the establishment of implied notice.
The interest which Higgins manifested in the payment of the bill, and in the funds deposited with Scott to secure it, without any declaration, at that time, or any other, of his want of notice, implied rather an admission of liability, than an exemption from it. His acts, which, often speak louder than words, seemed to say, I admit my liability. And his liability could not exist without duo notice.
But again: his perfect willingness to assume the payment of the bill at maturity, as proven by Snead, strengthens the admission of liability on his part, and the presumption of due notice, or a waiver of it, which is still further strengthened and sustained by the declaration in his answer that he did not recollect having received it, and his entire failure, to put the issue of his defence upon that ground, or even to -aver that ho had not receivd notice of protest for non-acceptance. For it should be remarked, that his evasive answer of a want of recollec„ tion, applies only to the notice of protest for non-payment, and not for non-acceptance.
Again—the payment of the bill by Morrison, still fur-(her strengthens the presumption of notice. For it is *106 not reasonably to be presumed, that he would have paid the bill without a liability to pay; and we have said that be was not liable without notice, and notice to him as a joint indorser, was notice to Higgins, by reason of their privity. Ghitty on Bills, 244; 2 Marshall, 615—16.
The interest tohmodem°praw tico, will render peTeSjs "Tin" terest m the event oí the suit —no that the decision will _directiy affect lum, to his profit or loss, his advan tage or disadvantage: a doubtful, SngMMntercsT goos to his credibility
„ A witness for an ex’or was a deyiseeandlegat.ee, hut had received the devise and e!f\he fflelw'a full release, and been by him, released from all liability upon his refunding bond It did not appear that a recovery in the present suit, was at all necessary, to enable the ex’or to met tall t'*pde.bts. Held, that the witness wa= competent, notwithstanding a recovery might pos sibly prevent a resort to his deviso or legacy to pay debts of the testator.
Before we examine the fourth proposition, it will be necessary to dispose of a preliminary question, as to the competency of Robert Scott, when his second deposit tion was taken, which deposition bears upon the fourth proposition. 1
. ,, . . - . . , He is, among many others, a specific devisee and pecun;al-y legatee under the will of Morrison, has received J ° , , . , _ , his devise and legacy, and executed a refunding bond to ^ executor. Before his second deposition was taken, * , ’ he executed a release to the executor, for all furtner c^a>ms or demands on the estate, and the executor executed a release to hitn for any and every ciaim or demand he had or might have, upon him, for or on account , ........ . , . of any demand which had or might come against him as sxecutor, or against said estate in anv event whatever, A v 5 ... - . . “ TT . . 7 by reason of said bon a or otherwise. He is still object-to 011 ^ie ground of his liability to creditors of said eHate.
The ancient rigidity of the rule of excluding witnesses on the score of interest, as incompetent, in all cases, has been much meliorated by modern decisions. Many •flings which formerly went to the competency of a witness, are now made to go only to the credit.
The interest which now excludes must be a present, certain. vested interest, and not uncertain or contingent. It musi be an interest in the event of the cause,^such as that the necessary, legal consequences of the verdict, will be, to better the situation of the witness by securing him an advantage, or repelling a loss. 2 Slarkie on Ev. 745-6. And whenever the interest is of a doubtful natm e, the objection goes to the credit, and not to the competency of the witness. Same.
Now the liability of Scott is remote, contingent and uncertain. and is not shown to depend in any manner certainly, upon the event of the suit. It does not appear that he will, necessarily, be benefited or injured by its *107 termination for or against the plaintiiF. It is uncertain whether there a>-e any demands against the estate of Morrison, unsatisfied, and if any, that the personal estate in the hands of the executor, is insufficient to pay them, or that the recovery of the money in the present suit is at all necessary to enable him to meet them.
The indorsers of a bill (like sureties) would be ex onerated by any arrangement between the drawer and holder for time; but mere delay in coercing payment— passive indulgence, would not have that effect.
One co-indorser cannot complain that the other gave up notes that the drawer had deposited with him as security for anoth,> er debt; he had no right to retain them after that debt was satisfied,
An interest depending merely upon the possibility of the continuing existence of outstanding demands, which may overreach the personal assets in the hands of the executor, which are first responsible, is too remote, uncertain and contingent, to exclude the deposition as incom., petent.
It is said that, in general, the creditor of a deceased person is a competent witness, though his testimony tends to increase the estate of the deceased, if his debt is not clearly to be effected by the event of the suit. Youst et als. vs. Martin, 3 Serg't. and Rawle, 427; 14 Ib. 178; Innis vs. Miller, 2 Dallas, 50; Barns vs. Hach, 3 New Hamp. Rep. 304.
The interest of a general creditor is more direct and pertain than that of a legatee situated as the witness in this case, is. It has also been decided, that a legatee whose legacy has been paid, is a competent witness. 2 Slarkie, 759.
We are, therefore, of opinion, that the second deposition of Scott was properly admitted.
Fourthly. We can perceive nothing in the. acts or conduct of Morrison, that, in our judgment, releases Higgins from his liability on the bill. It is true, that endorsers of bills are quasi sureties, and should be permitted to occupy the favorable attitude of sureties, in a Court of Chancery. If therefore, an arrangement be made by the holder, whereby time is given to the drawer, or a security released which has been provided for the benefit of the bill, the indorser has a right to complain, and therefore may claim his release from responsibility., ' But mere delay, or a passive act of procrastination, will not release a surety, nor should release an indorser.
After the bill was taken up by Morrison, notes- were deposited with him by Sanders, as collateral security. *108 And the amounts collected on those notes, and as the same were collected, were credited on said bill, and went to the benefit of Higgins, as well as Morrison. Higgins seems-, in: the mean time, to have been well apprized of the reception of those notes, and the purpose for which they were received, and of the various steps taken by Morrison, in relation to them; and never suggested an intimation of his disapprobation, but, on the contrary, appeared well pleased with what was doing, as the best means to secure the payment of the bill. Morrison made no arrangement with Sanders, by which time was given, nor did he give up or surrender any security that had ever been given to secure the payment of said bill. The notes which he surrendered were never given to se* cure the said bill, but were deposited with Morrison, before the bill was protested, as indemnity for another liability, and which, by the express terms of the contract, were to be surrendered so soon as said liability was discharged. It was discharged, and the notes given up, or a part of them. If the notes surrendered were worth any thing, Morrison- was not warranted in retaining them in violation to his contract, or in applying them to-the payment of another distinct and separate demand. And if he were, his failure to do so, or his giving them up, could not be regarded as giving up any security for the payment of said bill, which alone could work the release of a co-indorser.
A joint indorser of a bill, sued for contribution by tho co-indorser who paid it, is liable for half the costs of protest, postages, #c.
Fifthly. We are satisfied that Higgins-is chargeable with the one half of the costs of protest and postage, which are the only costs with which he is charged. These are necessary costs, incident to the non-payment of the bill, and are therefore recoverable by the holder or payor, supra protest, from all who are responsible for the bill. If so, they were chargeable to Morrison, and if he paid them, equity and good conscience, as well as law, would say the one half of the amount should be refunded by his co-indorser. The decision of this Court, in the case of Butler vs. Sudduth, 6 Mon. 543, to which we are referred by the counsel, has no application to this case.
It is therefore the opinion of this Court, that the decree of the Circuit Court be affirmed.