After advisement, the following opinions were delivered :
By Cowen, J.
The ¡question is, whether an explicit promise by a drawer or endorser of a hill or note, will of itself dispense with the usual direct proof of regular demand and notice. That it will, has been the settled and undisputed law, as understood and acted upon at Westminster Hall for more than a century. The rule was laid down by Raymond, Ch. J. in Haddock v. Bury, Trin. 3. Geo. 2 A. D. 1730, as follows: “If the endorsee has neglected to demand of the drawer in a convenient time a subsequent promise to pay by the endorser, will cure this laches.” M. S. Burnet, J. 7 East, 236, note. Demand of the drawer is spoken of, because at that time it seems to have been held necessary to call on him before the endorser could be charged, which is not the law now. Bayley on Bills, 496, Am. ed. of 1836. The case is cited from Selw. N. P. Chitty 4th ed. 323, thus: “ If an endorsee has neglected to demand of the maker of the note in due time, a subsequent promise to pay by the endorser will cure this laches.” Chit, on Bills, Am. ed. 1839,p. 533, note (to). In the last American edition of Selwyn, (ed. of 1839, p. 56,) this authority is set down, among several others, to prove that “ In cases where, though a debt or duty remains uncancelled, yet the liability to be sued is suspended, either by the intervention of a rule of law, or the provisions of a statute — a subsequent express promise will remove the suspension and restore the liability so as to give a right of action; for it is in the power of any party to waive an advantage which the law has given him.” He adds the case of Hopes v. Alder, 6 East, 16, n. ; Rogers v. *Stephens, 2 T. R. 713, and Lundie v. Robertson, 7 East, 231. [ *382 ] Hopes v. Alder, A. D. 1800 seems to stand distinctly on that ground. The counsel for the plaintiff said there was an equitable consider ationfor the promise ; Gibbs, contra, admitted the promise to be decisive against- him ; and Lord Kenyon repeated the remark. Vid. Fletcher v. Trogatt, 2 Carr. Payne, 569; Standage v. Creighton, 5 id. 406. In short, the force of the promise stands on what is often called in the books, by a latitudinary mode of expression, the consideration of moral obligation ; a phrase which can never be judicially understood in its- broad ethical sense, as it sometimes has been, without subverting the legal notion of a consideration. It means no more than a legal liability suspended or barred in some technical way short of a substantial satisfaction. This appears by the head of Selw. H. P. just cited; but is more fully shown in 21 Am, Jurist, 276, by the cases there cited. So far as it respects the *382 obligation of a drawer or endorser,’ it seems to be completely identified with the general doctrine of waiver of liability, being a subdivision of that head, viz. one mode of waiver among others, which, as we shall see, may be by any other act as well as a promise ; e. g. in Duryee v. Dennison, 5 Johns. R. 248, where the defendant, on being informed of laches, expressly agreed to consider the demand and notice as made in time. Vid. also Backus v. Shipard, 11 Wendell, 629, 633. Accordingly, in Chit, on Bills, 535, a. Am. ed. of 1839, the proposition is laid down thus : “ As an objection made by a drawer or endorser to pay the bill, on the ground of the want of notice, is stricti juris, and frequently does not meet the justice of the case, it is' to be inferred from the same cases” [those he had cited as repudiating all defence founded on ignorance of law] “ and it is indeed now clearly established, that even a mere promise to pay, made after notice of the facts and laches of the holder, would be binding though the party misapprehended the law.” He cites a M. S. case, Cooper v. Wall, Guildhall, K. B. 1820, before Abbott, C. J. I shall therefore hereafter consider this particular branch of the inquiry as in no way distinct from the general doctrine of waiver.
*For the reasons given, I shall consider the case below under [ *383 ] two general heads:
First, Waiver. Secondly, Presumptive evidence. The meaning of which words I shall explain more fully in the sequel.
First, as to waiver. As we have already, in part seen, a principle which found its way into the English cases at a very early period is, that a promise to pay, or any thing equivalent to that, after the person who would otherwise be entitled to insist on want of demand or notice was aware of the laches, amounted to a waiver of the consequence of the laches, and admitted the right of action. Such was the case of Anson and Bailey, A. D. 1748, reported in Bull. N. P. 5th Loud. ed. 276. There the endorser, in the country, writing to the indorsee of the note in town, who had apprized him of the maker’s neglect to pay it, said, “ When I come to town I will set that matter to rights.” So where, after laches by delaying notice, the party entitled to it promised to pay: Wilmot, J. said, “ by his conduct he has waived the neglect and acquitted the plaintiff.” Whitaker v. Morris, Esp. Dig. 58. A. D. 1756. 1 id. 137, Gould’s ed. of 1811. Chit. on Bills, Am. ed. of 1839, p. 533, note (w) S. C. In Stevens v. Dynch, tried before Lord Ellenborough, C. J. 2 Camp. 332, A. D. 1809, and afterwards considered at the bar, 12 East, 38, the holder had twice given time to the acceptor, thus completely discharging the endorser; but the latter promising to pay with full knowledge of the laches, was held liable. All the cases on this point are uniform as to the principle. Hopley v. Dufresne, 15 East, 275. Rogers v. Stevens, 2 T. R. 713. Potter v. Rayworth, 13 East, 417. Borradaile v. Lowe, 4 Taunt. 93. Leaf v. Gibbs, 4 Carr. & *383 Payne, 466. Wagstaff v. Boardman, K. B. Hill. 1827, 2 Stark. Ev. Am. ed. p. 166, note (9), and this remark applies both to the English and American cases. Duryee v. Dennison, 5 Johns. R. 248. Leonard v. Gary, 10 Wendell, 504. Crain v. Colwell, 8 Johns. R. 384. Griffin v. Goff, 12 Johns. R. 424. Sice v. Cunningham, 1 Cowen, 397, 406. Miller v. Hackley, 5 Johns. R. 375. [ *384 ] Agan v. M ’Manus, 11 Johns. R. 180. Backus v. Shipherd, *11 Wendell, 629, 683-4. Union Bank of Georgetoton v. Magruder, 7 Pet. 287. Reynolds v. Douglass, 12 Pet. 467, 505. Thornton v. Wynn, 12 Wheat. 183, 187. Hennen v. Desbois, 8 Mart. Lou. Rep. 147. Ticknor v. Roberts, 11 Lou. Rep. by Curry, 14. Martin v. Winslow, 2 Mason, 241. Bank of the United States v. Ellis, 13 Lou. Rep. 368. Donaldson v. Means, 4 Dall. 109. Norton v. Lewis, 2 Conn. Rep. 478. Ladd v. Kenney, 2 N. H. Rep. 340. Nash v. Harrington, 1 Atk. 39. Beck v. Thompson, 4 Harr. & Johns. R. 531. Gardiner v. Jones, 2 Murph. 429. Higgins v. Morrison’s Ex’r, 4 Dana, 100, 103. Hopkins v. Liswell, 12 Mass. Rep. 52. Creamer v. Perry, 17 Pick. 332-5, Shaw, C. J. Fotheringham v. Ex’rs. of Price, 1 Bay, 291. Pate v. M’ Clure, 4 Rand. 165. Kennon v. M’Rea, 7 Porter, 175. Williams v. Robinson, 13 Lou. Rep. 419.
The cases differ only in the mode of working and applying the principle ; and this difference exhibits itself in two ways: 1. As to the pleadings and evidence. In respect to these, the decided balance, though certainly not tho uniform course of authority, seems to be, that, -where there is a waiver, you may. in declaring, aver presentment, acceptance, or refusal to accept or pay, protest when necessary, and notice, precisely as if these steps had been literally taken. Then proving part payment, or a promise, or other equivalent act of waiver, either before or after suit brought, with knowledge of the laches, will satisfy all or any of these averments. Smith’s Commercial Law, 149, note (m). Williams v. Matthews, 3 Co wen, 252, 262. Norton v. Lewis, 2 Conn. R. 478, 480, 481. Taunton Bank v. Richardson, 5 Pick. 436. Kennon v. McRea, 7 Porter, 175, 185, 186. In Cory v. Scott, 3 Barn. & Ald. 619, 624, 625, Bayley and Holroyd, justices, differed on the question ; and Abbott, Ch. J. seems to have assumed that an excuse for not giving notice, was ad idem with actual notice. Firth v. Thrush, 8 Barn. & Cress. 387, countenances the same idea. That the act of waiver is equally available, whether done before or after suit brought, was held in Hopley v. Dufresne, 15 East, 275, and Kennon v. McRea, 7 Porter, 175, 185. This seems to involve the proposition that you may [ *385 ] aver *notice, &c. and satisfy it by proving waiver. In Firth v. Thrush, Littledale, J. said, you are to aver the legal effect: and what dispenses with notice, satisfies that averment. 2. The more difficult question, under this head relates to the kind and degree of evidence *385 necessary to fix the defendant with knowledge of laches. On this, the cases are of three classes viz. (1.) Those which require the clearest, not to say even direct evidence of knowledge. Such is one of our own cases ; Trimble v. Thorne, 16 Johns. R. 152 ; and to the same effect is a dictum of Savage, Ch. J. in Jones v. Savage, 6 Wendell, 658; and one in Louisiana, Tickner v. Roberts, 11 Louisiana R. 14. But (2.) The case of Kennon v. McRea, 7 Porter, 175,183,184, expressly contradicts Trimble v. Thorne, and the dictum in Jones v. Savage, and goes to the opposite extreme. At the latter pages, Collier, Ch. J. in a most learned opinion, after admitting that ignorance of the facts will nullify the promise or acknowledgment, lays down the rule : “ But a promise or acknowledgment will entirely dispense with proof of presentment and notice ; and will throw on the defendant the double burthen of proving laches, and that he was ignorant of it.” One of the cases which he cites comes fully up to this position ; Nash v. Harring ton, 1 Atk. 39, 42. In another case, Stevens v. Lynch, 12 East, 38, there was clear affirmative proof of knowledge. That also appears by the nisi prius report of the same case, 2 Campb. 332. The other, Taylor v. Jones, 2 id. 105, belongs entirely to another category, which, from the promise, &c. infers that the indorser was in fact regularly charged ; denies any laches ; and of course denies knowledge of laches. The case will presently be considered under that head, where it makes a very important item. (3.) Chancellor Kent takes the middle ground, saying : “ The weight of authority is, that this knowledge may be inferred, as a fact, from the promise under the attending circumstances, without requiring clear and affirmative proof of knowledge.” He cites Lundie v. Robertson, 7 East, 231, which goes mainly to the same point as Taylor v. Jones, and will therefore be considered in connection with that. Pierson v. Hooker, 3 *Johns. R. 68, [ *386 ] which he also cites, belongs partly to the same class, but goes likewise to the general principle that a promise with knowledge will bind ; not particularly to the amount or kind of proof. Hopkins v. Liswelt, 12 Mass. R. 52, goes strongly to support the position of the writer. Breed v. Hillhouse, 7 Conn. R. 523, tends also to that; but belongs more directly to the same class with Taylor v. Jones. The learned writer considers Trimble v. Thorne, as overcome by the weight of opposing authority. So far as it may be considered to require direct evidence of knowledge, it is moreover opposed by the language of Mr. Justice Nelson, in Keeler v. Bar-tine, 12 Wendell, 110, 118, 119; indeed, I think by the case itself, as I shall hereafter notice more particularly in another place. In the language of my quotation from Kent's Commentaries, the jury were allowed, in that case, to infer knowledge from the promise, under the attending circumstances. Numerous other cases go directly to this point. Hopley v. Dufresne, 15 East, 275. Debuys v. Mollere, 3 Mart. Lou. R. N. S. 318. Bank of the United States v. Ellis, 13 Louisiana R. 368. Union Bank of George *386 town v. Magruder, 7 Peters, 287. Martin v. Winslow, 2 Mason, 241, 242, charge of Story, J. Ladd v. Kenney, 2 New Hamp. R. 340. Gardiner v. Jones, 2 Murph. R. 429. Pate v. M’Clure, 4 Rand. 164. Williams v. Robinson, 13 Lou. R. 419, 421, expressly adopts the rule laid down in Kent’s Commentaries. Some of these cases come nearly, if not; quite, io the strong position of Chief Justice Collier, already noticed.
It is proper to say, what has already been alluded to incidentally, in respect to a notion formerly advanced by some of the cases, that the defendant sought to be charged by admission or promise, must not only know the fact of laches, but the legal consequence. This notion has long since been exploded. Bilbie v. Lumley, 2 East, 469. Pate v. M’ Clure, 4 Rand. 171. Stevens v. Lynch, 12 East, 38. Chit, on Bills, 535, a, Am. ed. of 1839, and cases there cited. Kennon v. M’Rea, 7 Porter, 184.
So much I have thought it necessary to say under a head [ *387 ] which assumes that Tebbetts, the defendant below, had *been in fact discharged by the plaintiff’s laches. Admitting this fact to have appeared, I am of opinion, notwithstanding, that the court below did right in refusing to nonsuit the plaintiff; that they were warranted, by a weight of authority not to be resisted, in submitting the question to the jury whether Tebbetts knew of the laches. We must intend they did so, for no exception is taken to the charge. The jury had a right to infer that the defendant had waived all objection, with knowledge.
In speaking of this head, I shall hereafter, for the sake of brevity, call it tdaiver ; and I must again repeat that it is entirely distinct from, and founded on a state of facts opposed to another ground, on which I think the judgment of the court below still more clearly sustainable than on that of waiver. I mean the ground that, where no laches appears in proof, the promise or other equivalent act of the drawer or endorser, shall be received as prima facie evidence, that there was no laches; that presentment, protest, notice, &c. were in fact made or given, the promise, &e. thus coming in place of the ordinary direct proof of those facts. It is necessary to adhere with great strictness to the distinction, inasmuch as all the treatises I have seen on bills of exchange and notes, confound waiver with the opposite ground. They state both these grounds together, as if they belonged to the same head, often citing cases in respect to one ground which belonged to the other ; thus introducing a degree of confusion into this branch of the law to which the decisions give no countenance whatever; nay, to which they stand directly opposed. And this brings me to the second general head — presumptive evidence.
Secondly. There was, in fact, no direct evidence in the court below, whether any demand had been made or notice given to Tebbetts or not. Under this state of things, I regard it as perfectly well settled that one of two courses was open to the plaintiff, in-order to satisfy the-jury-that demand *387 had been made and notice given : 1. he was entitled to prove directly, a demand by the one who made it, and that notice had been delivered to Tebbetts in due season, - by the witness ; or, if Tebbetts resided out of the city, that the- * witness had sent the notice by the post; [ *388 ] or, 2. that Tebbetts had made a part payment, or a promise to pay, or had otherwise admitted himself to be liable, and so ask the jury to infer both demand and notice. The plaintiff chose the latter course, which I shall call presumptive evidence ; and established a promise to pay the bill, under the sanction of the court below. The defendant below complains that the law of the land will not allow such proof to charge a drawer or endorser. In order to see whether this objection be well founded, I shall consider, first, how the question stands on English authority; secondly, on the cases in this court; and thirdly, on those in other courts of the United States.
First. As to English authority. In an action upon a promissory note by the endorsee against the endorser, it was proved that the defendant had- paid part of the money ; and Chief Justice Lee held that sufficient, to dispense with the proving of a demand upon the maker of the note. Vaughan v. Fuller, 2 Str. 1246, A. D. 1746. Hoford v. Wilson, 1 Taunt. 12, S. P. In Rogers v. Stevens, 2 T. R. 713, A. D. 1788, which was an action against the drawer of a foreign bill of exchange, the defendant insisted that it had not been protested for non-acceptance and notice given. This was sought to be answered in two ways ; first, by showing want of funds in the hands of the drawees, and secondly, that after the laches had happened, upon the plaintiff’s agent representing to the defendant that the bill had been dishonoured, and pressing him for payment, he said " it must he paid.” The court held that either answer was sufficient. As to the latter, Lord Kenyon said, “ This appears to me to be an admission that the holder had a right to resort to him on the bill.” Ashurst, J. said, “ The defendant’s subsequent acknowledgment4 that the bill must be paid,’ amounts in point of law to a promise that it shall be paid, and does away the necessity of considering the question relative to notice.” Grose, J. said it “ is an admission by the drawer that he had no effects in the hands of the drawees, and that he sustained no damage for want of notice that the bill had not been paid.” In Wikes v. Jacks, * Peake's N. P. Cas. 202, A. D. 1793, [ *389 ] it was held, that though wants of funds in the hands of the drawees, would excuse notice to the drawer, yet it would not- so' operate in respect to the endorser. But on proving a letter of the endorser, acknowledging the debt and promising to pay it, a verdict was taken against him. This case was tried before Lord Kenyon, Ch. J.
In 1806, the ground of the cases, both those which go on waiver and- those which go on presumptive' evidence, came to be considered by the K. B. in Lundie v. Robertson, a case reported both, by East and Smith, cotemporary *389 reporters, with no material difference as to the circumstances or language of the court. 7 East, 231 ; 3 Smith, 225. The defendant was sued by the endorsee as endorser of a bill of exchange. At the trial, the plaintiff proved merely, that long after the bill had been past due, an agent calling on the defendant in behalf of the plaintiff for payment, the defendant excused himself for the time, but said if the agent would call again, he would pay. The agent did call again with the bill, when the defendant offered him a draft on London, which he declined accepting. The defendant then said he had not had regular notice, but, as the debt was justly due, he would pay it. A verdict having been rendered for the plaintiff upon this evidence on motion for a new -trial, Lord Ellenborough, C. J. delivered the opinion of the court. He took up the case both on the first and second promise. As to the first, he said, “ When a man against whom there is a demand promises to pay it, for the necessary facilitating of business between man and man, every thing must be presumed against him.” [Smith makes him say, “ Every thing shall-be presumed to be right actum.”] “ It was therefore to be presumed prima, facie from the promise so' made, that the bill had been presented for payment in-due time and dishonored, and that due notice had been given of it to the defendant.” But taking the second conversation as connected .with the first, which made the defendant deny notice, the chief justice adds : “ Even that objection was waived in the same breath ; for the defendant said that as the debt was justly due, he would pay it.” On the [ *390 j the whole, *the chief justice said he did not put the case on the ground of waiver of objection to the non-presentation as an existing fact. It stood on the first and absolute promise, which he considered as admitting “ that there did not exist any objection to his payment of the bill; but that every thing had been rightly done.” In Potter v. Rayworth, 13 East, 417, A. D. 1811, both Lord Ellenborough, C. J., and Bayley, J. held such a premise to be presumptive evidence that notice of dishonor had been given in due season. Jones v. Morgan, 2 Campb. 474, A. D. 1810, recognized the guieral principle of presumptive evidence, by holding on the authority of Lundie v. Robertson, that a promise by the endorser of a bill to pay, admitted the acceptance. This decision was by Lord Ellenborough and a full court at bar. So where an acceptor of a bill payable to order, and purporting to have come into the plaintiff’s hands through sundry endorsements, applied to him for time, this was held to admit the endorsements, and thus supersede direct proof. Bosanquet v. Anderson, 6 Esp. R. 43. These two last cases I cite for the sake of their analogy, and because one of them expressly recognizes the principle of Lundie v. Robertson. But there are direct decisions enough. In Gibbon v. Coggon, 2 Campb. 188, A. D. 1809, the-drawer of -a foreign bill having promised to pay it, Lord Ellenborough said 4 “ lie-admits the existence of every thing which is necessary to render him liable. When called upon for payment of the bill, he ought to have *390 objected that there was no protest. Instead of that, he promises to pay it. I must therefore presume that he had due notice, and that a protest was regularly drawn up by a notary.” So in Taylor v. Jones, 2 Campb. 105, 106, A. D. 1809 Bayley J. held the doctrine in these words : “ Where a party to a bill or note, knowing it to be due, and knowing that he was entitled to have it presented when due to the acceptor or maker, and to receive notice of its dishonor, promises to pay it, this is presumptive evidence of the presentment and notice ; and he is bound by the promise.” In Greenway v. Hindley, 4 Campb. 52, A. D. 1814, a long time after the bill had become due, the defendant, the drawer, called on the' holder, ‘saying he had come to arrange its payment; and, on its being [ *391 ] shown, said it was regular and due from him and his partner. This was held by Lord Ellenborough a sufficient foundation for the jury to presume that the proper steps had been taken for charging the defendant, including presentment, protest and dishonor. In Wood v. Brown, 1 Stark. R. 217, A. D. 1816, the plaintiff, in lieu of the usual proof of notice, showed the defendant’s (the drawer and endorser’s) promise by letter to pay before the end of the next term. Lord Ellenborough said, “ the defendant does not rely upon the want of notice, but undertakes that the bill will be paid before the term, either by himself or the acceptor. I think the evidence sufficient.” Vid. Hodge v. Fillis. 3 Campb. 463. In Patterson v. Beecher, 6 Moore, 319, A. D. 1821, the sole proof, to charge the drawer of a foreign bill was a promise to pay ; and the court, on the principle laid down in Lundie v. Robertson, held that such promise dispensed with proof of presentment and protest for non-payment ; and by citing Jones v. Morgan, in connection with Lundie v. Robertson, they shew that they meant to go on the principle that, from the promise, both presentment and protest were to be presumed. In Gunson v. Metz, 2 Dowl. & Ryl. 334, 1 Barn. & Cres. 193, S. C. A. D. 1823, an agreement by a drawer to pay the bill was held by Abbott, C. J. at nisi prius, and afterwards by the court, evidence that notice of dishonor had been regularly received. At nisi prius in 1828, before Abbott, C. J. (then Lord Tenterden,) it was held that a promise by an endorser to pay eight shillings on the pound, dispensed with proof of notice. Margetson v. Aitken, 3 Carr. & Payne, 338. Dixon v. Elliot, 5 id. 437, S. P., A. D. 1832, before Park, J. The qualification of this doctrine still goes to prove the rule. Where the promise was merely by way of compromise, and rejected, it was for that sole reason held insufficient, either as an acknowledgment or waiver. Cuming v. French, 2 Camph. 106, note, A. D. 1809, before Lord Ellenborough. In Borrodaile v. Lowe, 4 Taunt. 93, A. D. 1811, Mansfield, C. J. adverted to and distinguished the ground of the cases. He said, “ in most cases where the defendants have -been ‘held liable, they have either made an express promise to pay, or ['*392 ] a promise when they had full knowledge at the time that they *392 were discharged, or where there was a real debt binding in conscience due from them.
Again, in Hicks v. Beaufort, 4 Bing. New Cases, 229, A. D. 1838, the principle of presumptive evidence, as laid down in Lundie v. Robertson, came under review, not as being questionable in its existence, for that was fully conceded; but counsel contended, on the authority of a case in the exchequer. Pickin v. Graham, 1 Crompt. Mee. 725, 3 Tyrwh. 923, S. C. that, to dispense with notice, the promise must be unconditional. Tindal, C. J. said : “ The cases go on this point only: that if, after the dishonour of a bill, the drawer distinctly promise to pay, that is evidence from which it may be inferred he has received notice of the dishonour, because men are not prone to make admissions against themselves ; and therefore when the drawer promises to pay, it is to be presumed he does so because the acceptor has refused. Lundie v. Robertson goes no farther than that, There the defendant said that he had not had regular notice, but, as the debt was justly due, he would pay it; and the jury having presumed from those expressions, that he must have received notice of dishonor, the court refused to interfere.” Vaughan, J. and Bosanquet, J. expressly concurred in the principle as Tindal, C. J. The court of exchequer fully recognized and acted on the same prineiple in Croxen v. Worthen, 1 Jurist ed. of Engl. Rep. 259, A. D. 1839. A promise to pay by instalments was there held sufficient ground for presuming presentment even against a direct issue upon the question under the new English rules. The court relied expressly on Lundie v. Robertson.
In the whole score of cases, and more, ranging from 1730 to 1839, no trace of the rule appears, that, in order to make the promise available as an admission, it is necessary to show that the drawer or endorser was aware of laches which the promise was intended to cure. A remedy for laches is not the object. To require knowledge of laches would render ev- [ *393 ] ery case going on the principle of presumptive ^evidence a legal solecism. The ground is that the promise shall be received, not as binding, per se, but as evidence that there were no laches: in other words, that regular presentment had been made, that it was followed by non-acceptance or non-payment, of which notice had been duly given. Otherwise should the man promise ? Will any one do so without knowing that he is liable ? Common experience shows that he will not. The English ca. ses, are, therefore in exact accordance with the principles of presumptive evidence. These principles are but another name for such connections be tween moral cases and effects, as are evinced by general observation.
The authorities,.as will have been seen, when once the promise is proved, infer from it every diversity of facts which may be necessary to charge the drawer or endorser, according to the nature of the particular case. Pre ?entment for payment, and notice of non-payment are familiar instances ap *393 plicable both to drawer and endorser. Presentment for acceptance, necessary both in respect to inland and foreign bills, and protest for non-acceptance or non-payment, necessary to the latter only, have all been presumed. Sometimes also the want of effects in the hands of the drawee. And in one case, though the declaration unnecessarily averred acceptance, this was presumed in order to satisfy the allegation.' In another case, the plaintiff’s title was presumed on the same ground, otherwise he must heve made it out by the usual evidence to show a series of endorsements.
That this presumptive evidence may be overcome, one may easily conceive. Stdbit prcesumptio clonec probetur in contrarium. Suppose it sought to infer presentment or want of effects; but the defendant calls the drawee or maker who positively disproves the fact in question ; the plaintiff must fail, unless he can sustain his action under the head of waiver. Thus in Lawrence v. Ralston, 3 Bibb, 102, 104, Owsley, J. admitted that a promise by the endorser to pay was, ¡orima facie, an implied admission of due notice to charge him ; but the presumption thus arising in that case being rebutted, and Ralston being but an accommodation endorser, the action was held to fail of any ground. So, in * Croxen v. Worthen, before [*394 ] cited, where presentment at the banker’s was inferred from a promise to pay by instalments, Parke, B. said the defendant might have called the banker to negative the inference.
I have already adverted to an apparent absurdity in our books on bills and notes, in connecting with the head of presumptive evidence, certain cases which require that before a drawer or endorser shall be charged by his promise or admission, it must appear that he was aware of laches. All our late writers, and we may suppose the same thing of the older ones, are in the habit of annexing those cases as qualifications both to the rule of waiver and of presumptive evidence ; whereas they never had, in the English cases, any practical connection with the latter; nor -could they have without subverting the rule. And we shall see hereafter in respect to some of our own dicta, that when they came to be brought in under this head, they were understood to strike out of existence a uniform series of cases more than a century in their progress. I have looked into all the English decisions which I can find cited any where as apparently working such’a consequence. The first is Blesard v. Hirst, 5 Burr. 2670, A. D. 1770. In that case there was, I admit, a clear and absolute promise by the endorsers, the defendants, to pay the bill to their endorsees. From that, a notice of non-acceptance might have been inferred; but Mr. Burrow, the reporter, states the negative of that fact as distinctly appearing. After saying the bill was refused acceptance, he adds, “ the plaintiff kept it in his hands three weeks without giving notice.” The presumption which would otherwise have arisen being thus rebutted, the promise was not even alluded to, either by the counsel, the court, or the reporter in his marginal note. The *394 only question mooted was, whether notice to the endorser of an inland bill was necessary. The next case is Goodall v. Dolley, 1 T. R. 712. In that, which was also an action by the endorsee against the endorser of an inland bill, two obstacles presented themselves to a recovery : First, the endorser’s promise was not absolute. He proposed to pay the bill by instalments. Secondly, it appeared affirmatively that the plaintiff had [ *395 ] in *fact, kept the bill from the 8th of November, when it was presented for acceptance, till the 6th of January, (about two months,) before any notice of non-acceptance was given, and that notice was defective in form. On the 11th of January the proposition was made to pay by instalments. The court very properly held, on the authority of Blesard v. Hirst, that notice was necessary. And, as to the promise, Ashurst, J. said the argument grounded on that “ might as well have been urged in Blesard v. Hirst, for the promise was absolute. Here the defendant made a conditional offer.” Buller, J. thought it extraordinary that, in Blesard v. Hirst, it should have been made a doubt whether notice was necessary. “ But no mention,” he says, “ is there made of the want of notice being waived by a subsequent promise; and that was a much stronger case than the present.” He then adds, (what seems to have been strangely misapplied in the books,) “ But in this case, there was only a conditional promise, which was made by the defendant under a total ignorance of all the circumstances relative to the bill having been dishonored.” It is most obvious that this remark had no application to the question of presumptive evidence or notice arising from the promise. The presumption was at an end : it had been overturned by positive contradiction. It therefore became necessary to resort to the ground of waiver. The remark is pointed at this ground only. It asks how could the promise be available as a waiver, when it appears affirmatively that the defendant was in utter ignorance that there had been any laches, any irregularity to be waived or curved ? Williams v. Bartholomew, 1 Bos. & Pul. 326, is also usually referred to. This case has no immediate relation to a bill of exchange or note. It decides that a lessor having acquiesced in another’s receiving rent from her tenant, such acquiescence being under a mistaken notion that her title had passed to the other, would not bind her personal representative. The principle is relevant to the effect of a drawer or endorser’s promise as a waiver, not to its effect as presumptive proof that every thing was regularly done to charge him. Hopley v. Dufresne, 15 Bast, 274, [ *396 ] is another case relied on by commentators. *In that case too it appeared affirmatively that the bill had not been duly presented. Of course the rule of presumptio rite acta was out of the question ; and it became necessary to charge the defendant, an endorser, on other grounds, which was finally allowed, as we saw in a previous notice of the case under the head of waiver. These are all the English cases which *396 are usually cited as showing that knowledge is essential to the validity of the promise ; and I repeat they have no relation whatever to such promise as the medium from which to infer that the endorser, &e., has been duly charged. They go only to that class of cases where, the laches being apparent, it is sought to be cured by a new promise as a substantive ground of action. Need I farther insist, that applying them to the promise when that is resorted to as evidentiary only, would produce a solecism ?
Secondly. I now come in the order I proposed, to consider the state of this question of presumptive evidence as it stands on the cases in this court. I have already noticed those cases so far as I mean to do under the head of waiver. There they agree in the general principle with the English and American cases, differing somewhat in the mode of applying the principle; and not being entirely uniform among themselves, as to the kind or degree of proof necessary to show knowledge. Those cases are numerous. I have examined them and find laches established in all. They are, therefore, cases merely on the question of waiver. They have nothing to do with the head of presumptive evidence.
In 1808, Pierson v. Hooker, 3 Johns. R. 68, came before this court. There the defendant, the drawer of a bill, promising the holder to pay it, the judge at nisi prius held that this superseded the necessity' for proving demand and notice. On motion for a new trial, the case went off on another point; but on the question whether the promise dispensed with the necessity for direct proof of demand and notice, Kent, Chief Justice, remarked that, “ if this were now to be decided, it would perhaps be sufficient to refer to the case of Lundie v. Robertson, 7 East, 231, in which the very point arose and the court of king’s bench held that ’where the [ *397 ] endorser had made a subsequent promise to pay, a previous demand on the drawer and due notice to the endorser were to be presumed, and need not be proved.”
In 1819, Trimble v. Thorne, 16 Johns. R. 152, was decided; a case which is now supposed to tie up the whole doctrine to mere waiver ; and at one dash strike out of existence a rule founded in the plainest principles of presumptive evidence, and fortified by a uniform line of authorities extending a hundred years. The case itself is no way incompatible with any of those authorities. The action was by the plaintiff as endorsee of a note against the defendant as endorser. And the case starts by stating, as a fact distinctly appearing at the trial, that regular notice of nonpayment had not been given to the defendant. But the defendant subsequently promised to pay, without its being shown that he was aware of the laches. On such a case, the only question which could be raised for decision was, whether the promise should operate as a waiver; and the court held that it should not, without more proof than was made in the cause that the defendant knew of the laches. 1 admit the question was discussed by counsel, whether a pro *397 mise, there, being no direct proof either of notice or laches, could be used as the medium of presumption that all things were rite acta. And Spencer, Ch. J. in delivering the opinion of the court, after disposing of the point of waiver, adds: “ The court never intended, in the various cases which had come before them, on this point, to leave it to be inferred from the mere fact of the subsequent promise, that regular notice had been given, or was intended to be waived. In the case of Beekman, survivor of Walsh, v. Connelly, recently before us, January term, 1818, we held that the proof of a promise to pay, merely, without its appearing also that the party knew he had not received regular notice, did not dispense with the proof of regular notice. An endorser may believe that due notice has been given, inasmuch as notices need not be personally served ; and, under an ignorance of the facts, consider himself liable when he is not. It is no hardship on the holder of a bill or note, to require of him proof of regular notice. [ *398 ] But if a party, with *a full knowledge of all the facts, voluntarily promises to pay, and waives his right to notice, he will be held to his promise.” I do not understand the manuscript case of Beekman v. Connelly, as resolving that a promise cannot be used, in a proper case, as presumptive evidence of regular notice. In the brief note furnished by the learned chief justice, we are not told how the proof stood, on the fact of notice having been given. His saying that the proof of the promise, without its appearing that the defendant knew he had not received regular notice, leads me to think that the want of regularity distinctly appeared, or was assumed to exist. That being so, the case was no more than Trimble v. Thorne; viz. a case of waiver, not of presumptive evidence. No ease in this court — no judge of this court — in any reported case previous to Trimble v. Thorne, ever denied or even questioned the doctrine. I have, I am confident, cited all our previous cases which respect either waiver or presumption. It will be seen that all except Pierson v. Hooker, belong where I have placed them, to the title of waiver. On the contrary, the only judges of this court who had ever before spoken to the rule of presumptive evidence, were Chief Justice Kent, in Pierson v. Hooker, and the judge who tried that cause at nisi prius ; and both of these had recognized its existence. Up to 1819, then, the cases in this court are favorable to the rule ; for we have that way the dicta of two judges against one ; or, if Chief Justice Kent tried the cause of Pierson v. Hooker, (for who was the judge holding the circuit does not appear by the report,) then we have the dictum of Chief Justice Kent against that of Chief Justice- Spencer, the former fortified by the British cases for a century, and the latter standing, as Hosmer, chief justice, said in Breed v. Hillhouse, which-1 shall notice by and by, alone. From Pierson v. Hooker to Trimble v. Thorne, an interval of eleven years, the evidence in favor of the rule had been continually accumulating. *398 I have noticed the cases which furnish that evidence, in their chronological order.
One of these, Taylor v. Jones, was before Mr. Justice Bayley, who had written a treatise on bills. All this too, *under the [ *399 ] same doctrine of notices by the post, which may never in fact reach the defendant, as prevails here. It is possible I admit, that he may promise, on the assumption that notice has been sent, when it has not in fact 5 and when therefore he has not received it. I can only say upon actual experience, that I never have found among my own clients, men who were at all prompt to do so. The only instances I now remember, are of refusal to promise ; and one occurs to me of actual exemption from payment of a nonpromisor, on the ground that notice had not been sent. It is still more possible, nay it is highly probable that a drawer or endorser may have no direct knowledge of presentment and refusal to pay. But it is not consistent with the general spirit of mercantile vigilance, that he should omit to inquire, and reach a state of moral conviction about as safe to act upon as his own personal observation. Men would not be hasty to outrun that conviction. The course of inquiry is open to them. They are on the alert; and can generally ascertain the truth with great precision. If not entirely satisfied, they can refuse to promise, and laches exempts them. 1'f they find there has been laches, they then take their choice whether they will waive it. But at worst, if a man, knowing that he in conscience owes the money, should indeed mistake, it would be no serious mischief to the interests of substantial justice. He would but forfeit a technical defence, treated by all the books as strieti juris. Men make mistaken concessions in other cases; but that is no argument against their admissibility in evidence. If a man makes an admission contrary to the fact, he incurs the hazard of setting the matter right by other evidence. If he fail, he must abide the consequences. So far, then, I must say with deference, my mind is not convinced that the dicta of the learned chief justice in Trimble v. Thorne, speak forth the common law of England. That, I am bound by the constitution to follow, till I find it changed by the legislature, or overturned by authority.
While saying so much, I am entirely aware that the dicta in Trimble v. Thorne were restated and recognized by the recent case of Jones v. Savage, 6 Wendell, 658, A. D. *1831. That was an action [ *400 ] by the endorsee against the endorser of a foreign bill of exchange ; and to raise the inference of presentment, non-payment and notice, the plaintiff’s attorney proved that after suit brought, the defendant asked and obtained time with a view to negotiate; he again desired delay; and finally, on being requested to give a cognovit, said if he did not pay in a short time, he would make an arrangement with the witness which should be satisfactory. The defendant had also, on his application for the benefit of the, insolvent act, inventoried and sworn to the debt as- due to the plaintiffs. On *400 this evidence, Mr. Justice Nelson, then circuit judge, ruled that the plaintiff was entitled to recover. Rut this court granted a new trial on two grounds : 1. That the attorney having sued for a non-resident, without causing the proper security to be given, was liable for costs, and so not a competent witness. But the court also decided, as I admit they were in duty bound to do, the question on the admissibility of the evidence. On the sole authority of the dicta in Trimble v. Thorne, they held that neither the asking of the time, the promise, nor inventory, nor all together, could be adduced as presumptive proof. Taking the whole, it was as strong evidence, to my mind, as if the defendant had in terms delivered a written admission to the plaintiff of a regular protest and notice. The case, I think, must have considered the dicta in Trimble v. Thorne as going to cut off almost every kind of circumstan. tial evidence or presentment and notice. Why direct proof should always be required of these facts more than any others, I must, with great deference, be allowed to'say I cannot perceive. The chief justice, who delivered the opinion of the court, admits that the decision was contrary to the English rule as now held, citing 4 Campb. 52. I have not been able to find that the rule has been doubted for more than a century ; and I am entirely satisfied it was a part of the common law at the time of our revolution. Whether it was so, I have searched and endeavoured to collect the evidence. The result has been such a long and unbroken course of decision by the ancient and modern courts at Westminster Hall, as my mind cannot [ *401 ] resist. The Combination of authority and reason, I am satisfied is powerful when fully seen and appreciated, to be effectually overcome by any mind. The extreme difficulty of still following the dicta in Trimble v. Thorne, as was done in Jones v. Savage, was felt so strongly three years after the decision of the latter case, that it was, I think, in effect overruled. Keeler v. Bartine, 12 Wendell, 110, 118, 119. In that case, a note made by S. and C. had been endorsed successively by K. and B. to W. and D., who taking it up, the other four parties agreed among themselves to refund each one fourth to W. and D., K. the first endorser refusing, and B. the second endorser being compelled to pay the whole, he brought assumpsit against K. for contribution. K., among other objections, insisted that notice of non-payment of the note had not been given to him. There was no direct proof of this notice at the trial; but it was sought to be inferred from circumstances such as the following: 1. W. and D. had themselves sued, and after contestation, recovered judgment against K.; 2. K. and B. had agreed with W. and D. that thelatter should receive to the use of the former dividends due from the estate of the makers, who had taken the benefit of the insolvent act; and 8. The agreement by K. to pay one-fourth of the demand to W. and D. On these points, Mr. Justice Nelson delivered the opinion of the court. Of the agreement that W. and D. should receive dividends to his (K.’s) use, he says: “ It was some evidence that the latter was duly charged, as it admits his *401 liability as endorser of the note.” Then, of the agreement to pay one fourth, he adds, it “ is strong evidence according to all the authorities, and in England would probably be conclusive.” He speaks of the comparative strictness of Trimble v. Thorne, and considers it as denying the doctrine of inference, either from a promise or part payment. But thinks that the action may be sustained against K. even within that case on the ground of waiver ; for the jury, after the litigation which'had been carried on against K., and his ample opportunity to ascertain all the facts, might have inferred his full knowledge of the laches, provided there had been any; and the court adopted these grounds. The learned judge *cited [ *402 ] some of the English cases 1 have adduced, (Lundie v. Robertson, among others,) to show that either agreement would warrant the inference that the defendant had been regularly charged. This is at once surrendering the dicta in Trimble v. Thorne, (and I have shown that they are no more than dicta,') which repudiate the endorser’s agreement as presumptive evidence. The learned judge goes farther, and materially qualifies that case on the only point decided by it. If the case under his consideration were to be looked to on the ground of waiver, then he insists that the endorser’s knowledge of laches might be inferred from the circumstances. This, as I before suggested, brings the doctrine even of waiver hack to Hopley v. Dufresne, 15 East, 275.
Thirdly. As to the American cases in general. I have by no means overlooked the decision or reasoning of the court in Otis v. Hussey, 3 New Hamp. R. 346, cited by the counsel for the plaintiff in error which I concede fully repudiates the doctrine that regular demand or notice may be inferred, as I have insisted it may he. Richardson, Ch. J. remarks, that, “ in an old commercial country like England, where a great portion of the business has long been transacted by means of negotiable paper, and where most of those who deal in such paper must be presumed to be acquainted with the law in relation to it, it may be proper to leave it to the jury to infer a demand of the maker from a promise of the endorser to pay. But in this state, (New Hampshire,) where negotiable paper has a very limited circulation, there is no ground on which such an inference from that fact can rest.” He adds, that he, therefore, considers the rule which he understands to be adopted in New-York, as the true one. Otis v. Hussey, was decided in 1826, and I have already endeavored to show that no such rule as the learned chief justice supposes, had been at that time adopted in this state by direct adjudication ; none since, except in Jones v. Savage, which must stand or fall with the dicta in Trimble v. Thorne, for it takes no ground beyond them,. I have already examined the reasons put forward by those dicta, and endeavored to show that, in *this state we stand [ *403 ] in the same case with England as to the admissibility of the presumption. Unele? the increasing' prevalence of the credit system, ever since *403 1819, when Trimble v. Thorne was decided, I am by no means disposed to admit, in respect to this state, however the matter may be with regard to New Hampshire, that the nature of commercial paper is more imperfectly understood in proportion to the number of our population than in England. Rut if it were, that is by no means decisive on a question of competency. The objection of less knowledge among our population, would go, at most, rather to the persuasive effect than the admissibility of the presumption. But when I hear of a drawer or an endorser, on being called upon, unhesitatingly offering to pay, for one, I cannot resist the conclusion that he at least labors under a full moral conviction that the proper steps have been taken to charge him, and means to be understood as admitting this to be so. If his language or conduct be equivocal, the course in England, and so it should be here, is to leave the question, on the force and effect of the evidence, to the jury. Booth v. Jacobs, 3 Nev. & Mann. 351; Hicks v. Beaufort, 4 Bing. New Cas. 229.
But, moreover, a decisive answer to the case cited is, that the mass of American authority against it is as overwhelming as the British. Walker v. Laverty, 6 Munf. 487, came, in 1826, before the supreme court of appeals of Virginia, a state certainly not more commercial than New-York. The action was by the payees against the defendant as drawer of an inland bill of exchange, averring presentment for payment, refusal to pay, and protest for non-payment, with notice of the protest to the defendant. On the trial, the defendant insisting that the notice must be proved, and the plaintiff being unable to produce direct proof, he introduced a witness who testified that he applied to the defendant for payment of the bill, who acknowledged that the debt was a just one, and said he would pay it ; and nothing was said in that conversation as to his receiving notice or not. The defendant’s counsel insisted that the promise must go for nothing unless the plaintiff [ *404 ] proved further, *that the defendant knew there was laches. This the court denied ; and instructed the jury to find for the plaintiff. On appeal, the decision was approved. The court below stated that the acknowledgment was a waiver of notice. But the court of appeals did not mean to adopt this inaccuracy of expression, though they gave no reasons. The question coming again before them in 1821, Pate v. M’ Clure, 4 Rand. 164, 171, 172, they reconsidered the point, and took occasion to explain the ground of decision in the former case. In order to this, they cited and approved several of the English authorities, which take the ground that, from such a promise, notice is, prima facie, to be presumed. Among others, the court regard the words of Lord Ellenborough in Gibbon v. Coggon, as very strong to the point, reciting the extract which I have already given. The same point has been, I think, substantially held in Kentucky. Mills v. Rouse, 2 Litt. 203, A. D. 1822 ; and vide Lawrence v. Ralston, 3 Bibb, 102, 104, per Owsley, J. A. D. 1813, So in Massachusetts. Martin v. Ingersoll, 8 *404 Pick. 1, A. D. 1829. Also, in Louisiana. Debuys v. Mollere, 3 Mart. Lou. R. N. S., 318, A. D. 1825. In this case, Matthews, J. said : “ The promise itself is prima fade evidence of due notice.” This very point was' also adjudged in South Carolina, in Hall v. Freeman, 2 Nott & M’ Cord, 479, A. D. 1820. Huger, J. approves and adopts the language of Dandle v. Robertson, that every thing, presentment, notice, &c. are to be presumed from the promise. In Thorn v. Wynn, 12 Wheat. 187, 188, A. D. 1827, it will be found that the supreme court of the United States, express themselves in favor of the same principle. So I also understand the supreme court of Vermont, in Nash v. Harrington, 1 Atk. 39, A. D. 1825. In 1836, the doctrine was expressly recognized in Kentucky, as it stands on British authority. Higgins v. Morrison’s Ex’r, 4 Dana, 100, 103, 104.
So much for cases nearly cotemporary with Trimble v. Thorne. But, in 1829, this case, as to its dicta concerning presumptive evidence, was fully considered by the supreme court of errors in Connecticut, and unhesitatingly repudiated. * Breed v. Hillhouse, 7 Conn. Rep. 523. [ *405 ] That was an action against the guarantor of a promissory note, who claimed that demand of payment and notice should be sworn as if he were an ordinary endorser. No direct testimony of this was given; but only proof that the defendant promised to pay the note. The judge at N. P. held this to be presumptive evidence of demand and notice. On motion or a new trial, the decision was sustained on a review of the leading English cases connected with the dictum,of Kent, chief justice, in Pierson v. Hooker. Hosmer, chief justice, delivered the opinion of the court. After citing the cases in support of the decision at N. P. he adds : “ The case of Trimble v. Thorne, 16 Johns. R. 152, is opposed to these decisions; but so far as my knowledge extends, it stands alone and unsupported. It is a presumption of reason sustained by the common experience of mankind, that a man will not pay a debt which is not due, nor acknowledge the existence of a debt to which he is not liable.” The learned Ch. J. also in the same case conferred a benefit upon the law by properly distributing several of the decisions between the two distinct heads waiver and presumptive evidence. The court were unanimous in the views taken by him, though I concede it was not essential to the case that they should have been presented ; for the court admitted that the guarantor was not-entitled to require a demand or notice. The only criticism to which that case is open lies in its treating Trimble v. Thorne as a direct decison on the point of presumptive evidence. As I said before, that case does not pretend that the endorser had been regularly charged. It admits the contrary, and takes ground that the defendant promised in ignorance of that fact. I must be permitted to say also, with the greatest deference, that the late learned chief justice of this court fell into the same misapprehension when he came to decide Jones v. Savage. The doctrine of Trimble v. Thorne, though out of the case, was announced with *405 great confidence, and with the air of considerable deliberation. Yet the authorities for the English rule, were evidently overlooked by Chief Justice Spencer, at least those which were most directly against him. [ *406 ] The cases cited by Mr. Johnson in note (a) 16 Johns. *R. 153, were alone decisive ; at least they were calculated to wake the mind, and carry it out on the line of research. To Chief Justice Spencer, learned and discriminating as he is known to have been, such a research would have left no alternative. At any rate none is now-left, unless courts have ceased to be governed by the strongest evidence of the common law which can be obtained. In our progress, we find the age of the rule, its uniform and unbroken dominion, the character of the courts which have always submitted to its authority, its unshaken predominancy on both sides of the Atlantic, except in one or two solitary cases where the boldness of dicta has lulled the spirit of judicial vigilance ; and added to all this, its exact harmony with the general principles of presumptive evidence.
No attempt has, that I find, ever been made to resist the introduction of the promise, on the ground that, as circumstantial proof, it is inferior in degree to direct proof. A distinction of that kind was mentioned in Williams v. The East India Company, 3 East, 193, 201; but does not appear to be completely established. Vid. 1 Phil. Ev. by Cowen & Hill, Am. ed. of 1839, p. 219, and note 417, compared with the 8th Lond. ed. of Phil. & Amos, p. 439. The case cited appears to he treated, in Cowen & Hill’s edition, as introducing the distinction ; but in the last that idea is noticed as the result of misapprehension. The learned writer here considers the question as having arisen rather on the measure of proof than the substitution of secondary for primary evidence. Mr. Starkie, in his last edition, also takes the latter view of that case. Stark. Ev. Am. ed. of 1837, p. 441; though he took the opposite view in his former editions. Vid. 1 Stark. Ev. Am. ed. of 1828, p. 514, § 80, cited in note 322 of Cowen & Hill’s Phil, as 3 Stark. 515, i. e. 3d part with the marginal paging. The manner in which this question has been treated by several of the American courts may be seen in Cowen & Hill’s Phil, note 325, p. 423, and note 417, p. 544. It is very nice, and need not now be pursued; for the cases going most strongly to establish the secondary character of presumptive evidence, and rejecting it on that ground, generally, if not always have requir- [ *407 ] ed *that the existence of the direct and higher evidence should appear affirmatively and clearly to be within reach of the party, before the distinction can be applied. The existence of direct evidence appearing, a suspicion is many times raised against the presumptive evidence so strong as to destroy its effect with a jury, if not to shut it out as incompetent. The dispute between quality and measure is, perhaps, therefore, rather one of words than substance. The direct evidence of the usual steps to charge a drawer or endorser, is often lost. The notary or other witnesses *407 may be dead or absent beyond the jurisdiction of the court; presentments, notices, &c. are all matters which usually may, in their own nature, be proved by direct oral evidence; and where that is not shown to be in existence, there is nothing in the rule of Williams v. The East India Company to shut out a promise or part payment as secondary evidence. If it be so in any case, on the ground that, ex natura rei, higher evidence must be presumed to exist, that could only be as to the protest of a foreign bill of exchange ; an actual written protest of a foreign bill being in general necessary, and this being a writing which is self-proved by the seal of the notary, it is plausible to say that the protest must be produced, if that be insisted on, as primary evidence. Vid. Chit, on Bills, 489, Am. ed. of 1839. But the protest has never yet been regarded as evidence of a primary character; and the contrary has been repeatedly held. Three cases now occur to me where a promise to pay by a collateral party has been received as presumptive evidence that a foreign bill had been protested. Gibbon v. Coggon, 2 Camp. 188. Greenway v. Hindley, 4 id. 52. Patterson v. Beecher, 6 Moor. 319. Again ; protest is not always necessary to, charge the drawer. It is not so when the drawee has no effects; and in Rogers v. Stephens, 2 T. R. 713, the drawer saying the bill must be paid was held equivalent to an admission that there were none. If a drawer or endorser be fully indemnified, that has often been held a ground, of itself, for charging him. The purpose of presentment, protest and notice is, that he may save himself; and proof of them becomes unnecessary, if it appear clearly and affirmatively *that he is absolutely safe without them. If he ad- [ *408 ] mit his liability, why not, on the principle of Rogers v. Stephens, say the admission involves the fact that he has absolutely saved himself in some way, as well as that he never was in danger ?
In any and every view which I have been able to take of the decision by the learned court which tried and re-examined this case, I cannot resist the conclusion that they are entirely sustained by the law of the land.
A technical objection has been raised by the plaintiff in error. By some strange clerical mistake, either in the original record, or transcript, or error books, it appears by the latter as if the placita in the superior court was of August term, 1833, while the day of the promise laid in the declaration is August 1st, 1837, four years after suit brought. The declaration, however, contains the general counts only, and counsel seem aware of the weakness under which the objection labors in point of principle, by suggesting that the copy of the bill of exchange served with the declaration bears date in' March, 1837. Could he import that bill into the declaration I admit the judgment could not be sustained without amendment; for, where the cause of action appears on the face of the record to have arisen after suit brought, the objection is fatal even on error. Here, however, it falls short of that principle ; for the day is entirely immaterial. The bill of exchange cannot *408 be regarded as a part of the record, although this contains a suggestion that the plaintiff filed and served a copy of the bill as that on which the action was brought. The statute of March 21, 1837, Session Laws of that year, p. 72, provides that “ an entry in substance of a true copy of” [a bill or note on which the plaintiff declares generally] “ in the circuit roll, with a suggestion of the service thereof upon all the defendants served with process or declaration shall be prima facie evidence” of the fact of service. I do not deny that a suggestion which is properly a part of the record may be the subject of a writ of error. Here, however, it is not. The entry is at most merely evidence of a certain fact, leaving its relation to the record, in legal effect, the same .as it stood at common law. Error never [ *409 ] would lie at common law on *matter of evidence, nor will it now except where some point is presented by bill of exceptions. The point now under consideration is not so raised. I do not think, therefore, that error would lie on the point even from this court, to which the statute seems to be exclusively confined. It authorizes an entry on the circuit roll, which is unknown to any court in the state except this. I do not find that the statute has since been extended, as it undoubtedly should have been, to the superior and county courts. Causes in those courts therefore seem still to stand on the rule in Steuben County Bank v. Stephens, 14 Wendell, 248, which required independent evidence of service to be made at the trial. The whole is, therefore, in this case the merest matter of evidence not made a part of the record or bill of exceptions ; and so not coming here in a way which enables us, for the purpose of the objection, even to know that the action below was based on a bill of exchange. The day stated in the declaration must therefore be regarded as relevant to matters exclusively applicable to the general counts, with respect to which the day may be laid at any time.
I know certain cases in this court have held that, though the day laid in the declaration be so totally immaterial, that it may be disregarded in proof, yet it must, in all cases, appear on the record to have preceded the commencement of the suit. Cheetham v. Lewis, 3 Johns. Rep. 42. There the action was for a libel, and the defendant demurred generally, and the demurrer was sustained, because the day of publication was laid after that contained in the memorandum. I confess that, from the strong language of the court, who pronounced the mistake to be fatal, even in arrest or on error, I had since regarded the decision of the cause of action as making the day so far a matter of substance in all cases, that, relatively to the placita, of the inferior courts, and the memorandum of this, it must always appear to have preceded the day mentioned in them. I infer that Waring v. Yates, 10 Johns. 119, went on that ground. It was an action of assumpsit in which it seems the plaintiff relied on the general counts, though that is not clearly stated. The court there iterate the rule in Cheetham v. Lewis, [ *410 ] and cite *that case alone to sustain the demurrer. It must in any *410 view be regarded as an authority going materially to sustain the very broad doctrine of the former case. The only subsequent case I find is Thomas v. Leonard, 11 Wend. 53. There the day was material, the declaration being expressly on a promissory note, which appeared not to have fallen due till several months after suit brought. This court pronounced the objection fatal on motion in arrest, but gave leave to amend it; it appearing that the entry was made through a clerical mistake. In the previous case of Soper v. Soper, 5 Wend. 112, on the mere presumption of a similar mistake, which resulted in a successful motion for judgment non obstante veredicto, this court gave lime for making a motion to amend. Indeed every body knows that such slips arc about always produced by the carelessness of some clerk. No case in this court that I remember goes the length of saying that the amendment may be made by the court to which error is brought, though such a defect was amended, after error brought, on motion to the court below, in Dickinson v. Plaisted, 7 T. R. 470. But I have no hesitation in saying it is embraced by one of the provisions for amending after verdict, contained in the 2 R. S. 344, 2d ed. § 7, sub. 14. This subdivision is very comprehensive, authorizing us, when acting as a court of error, to amend all clerical mistakes in the record, by which neither party may have been prejudiced. On this appearing to be a mistake, we might allow the defendant in error to amend, at least on payment of costs; vid. id. § 8 ; and for that object I should think we ought to give him time to move, if that were necessary.
But, although a motion to amend might be necessary, and clearly would, were the day material as it was in Thomas v. Leonard, I am of opinion that our earlier cases cannot be sustained in their application to a case where the day is entirely immaterial. In all the authorities referred to by the court, on the occasion of deciding Cheetham v. Lewis, the day laid in the declaration was material; in the first, Venables v. Daffe, Carth. 113, as being descriptive of a record. The other two, (1 Doug. 61, and 7 T. R. 470,) were cases *of declarations on notes, averring them to [ *411 ] have fallen due after the day mentioned in the memorandum. There are some old English cases which go the whole length of Cheetham v. Lewis, but they were cited, reconsidered and overruled in the late case of Arnold v. Arnold, 3 Bing. New Cas. 81, which is directly in point for the defendant in error. On a declaration for money lent laying the day after the suit had been brought, the court refused to arrest the judgment, confining the rule to those cases only where the day does not appear to bo wholly immaterial. It is only by such a limitation, that the rue can be made to harmonize either with principle or authority.
I am of opinion, on all the points taken, that the judgment of the court below should be affirmed.
*411 By Bronson, J.
After looking into most of the cases on this question, I came, at first, to the conclusion, though very reluctantly, that the judgment must be reversed. But the remarks of my brother, Cowen, upon the cases in this court, and the distinction which he has so fully illustrated between this case, and those where it appeared affirmatively, that the endorser had not been duly charged, have satisfied my mind that we are at liberty to consider the question upon principle, and the weight of authority elsewhere, as well as in this state.
But while I concur in the affirmance of the judgment, I am not prepared to go so far as some of the English cases have gone, in charging an endorser or drawer on a promise to pay ; and I shall, therefore, state very briefly, and without reviewing the cases, the grounds of my opinion.
When the fact appears that there has been laches on the part of the holder, a subsequent promise by the endorser to pay the bill, will not render him liable, unless it also appears that the promise was made with full knowledge of the fact that he had been discharged by the laches of the holder. But on proof of a promise by the endorser, with knowledge that he was not liable on the bill, the holder may recover: not, 'however, on the [ *412 ] ground that the endorser is bound by *the promise as matter of contract, for it wants consideration; but on the ground that the promise amounts to a waiver of the objection that the proper stop's had not been taken to charge the endorser. If this were a new question, I should feel great difficulty in subscribing to this application of the doctrine of waiver. The undertaking of a drawer or endorser is conditional. He agrees that he will pay if the bill is dishonored, and he has due notice of that fact. If the bill is not presented and notice given at the proper time, the drawer or endorser is discharged. His obligation is at an end. Before the bill comes to maturity, he may dispense with the necessity of making a demand and giving notice ; but 1 do not perceive how he can do so afterwards. Before the proper time arrives, the necessity for doing an act may be waived; but I do not see how that can be done after the time for, performance has gone by. A man may sometimes waive the assertion of a forfeiture ; but cases belonging to that class depend on peculiar principles, and are nob I think, applicable to the case of a drawer or endorser, who has not been duly charged. As an original question, I should be of opinion, that whenever it plainly appears that there has been laches on the part of the holder, the drawer or endorser is discharged, and a subsequent promise, though made with full knowledge, cannot aid the case. But the rule has been settled otherwise, and whenever it becomes necessary to apply it, I shall feel myself bound by the weight of authority.
In this case, the question of waiver does not arise, for there was no evidence tending to show affirmatively that there had been laches on the part of the holder. The question, therefore, is not concerning the effect of a sub *412 sequent promise, when it appears that the endorser had been discharged ; but whether there was sufficient evidence of due diligence on the part of the holder, to carry the cause to the jury. So far as relates to notice I cannot entertain a doubt that there was good presumptive evidence that the endorser had been duly charged. The unqualified promise to pay, furnished strong ground for believing that notice had been given, because such a promise is not usually made unless ^notice has been received ; [ *413 ] and I can perceive no reason why this, like most other questions of fact, should not be submitted to the jury upon presumptive as well as upon direct evidence. If it were not for the cases of Trimble v. Thorne, 16 Johns. R. 152, and Jones v. Savage, 6 Wendell, 658,1 could not have doubted for a moment on the question ; and my brother, Cowen, has shown, that the first of those cases is directly in point, and that the second was somewhat shaken by the subsequent case of Keeler v. Bartine, 12 Wendell, 110. If we are at liberty, as I think we are, to consider the question either upon principle, or the strong current of authority, it is quite clear that there was evidence, from which the jury might find that the endorser had due notice of the dishonor of the check.
This was not, however, a presumption of law, to be declared by the court ; but a presumption of fact, which belonged to the jury. Hicks v. Beaufort, 4 Bing. N. C. 229. If the defendant had excepted to the instruction by the judge, that “ upon the evidence as given the plaintiff was entitled to recover,” the judgment could not be maintained : but the exception taken only goes to the refusal to nonsuit the plaintiff, and there the judge was clearly right, so far as relates to the question of notice.
But in relation to the due presentment of the check at the bank for payment, a fact which the plaintiff was also bound to establish, the ease is not so free from difficulty. Although an unqualified promise by the endorser to pay the bill, is presumptive of notice, it has little or no tendency to prove a demand ; and on this point I am not prepared to go so far as some of the English cases have'gone. Whether the bill has been presented for payment or not, is a question upon which, in the ordinary course of business, the drawer or endorser has no personal knowledge. lie usually acts upon information communicated by the holder. On receiving notice of the dishonor of the bill, he would be likely to believe and act upon the information ; and he might either pay, or promise to pay, although no demand had in fact been made. I do n:-t see, therefore, how the promise, although it has some tendency to prove notice, can be regarded *as laying a sufficient founda- [ *414 ] tion for presuming a demand. It proves little, if any thing, more than that the drawer or endorser believed the bill had been dishonored, because he had been so informed by the holder.
But here there was something more than a promise to pay. When called on by the witness, the defendant said he knew the check had been dishonored, *414 and had lain over.” Although not conclusive, this was evidence from which the jury might infer that the check had in fact been dishonored — in other words, that it had been presented to the bank at the proper time, and that payment had been refused.
As there was evidence from which the jury would have been authorized to find both presentment and notice at the proper time, the motion for a non-suit was properly over-ruled, and the judgment should be affirmed.
Nelson, Ch. J. concurred in affirming the judgment.
Judgment affirmed.