By the Court, Nelson, Ch. J.
It has already been decided in this case that the suit was properly brought in the name of the plaintiff, as Johnson and Green were the payees of the note, and the legal title properly derivable through them by the endorsement. ( Willis v. Green, 10 Wend. 516.)
If notice of protest be material to charge Green as co-payee and endorser, it is equally important that it should be brought home to Johnson before either can be made liable. They were not partners, and therefore notice to one will not answer. It xvas once supposed, in a like case, that the endorsers were part *234 ners quoad the particular transaction; (Carvick v. Vickery, 2 Doug. 653, n.;) but that doctrine was repudiated when the case afterwards came on for trial before Lord Mansfield. (Id. 654.) It has ever since been the settled commercial rule that co-payees, not partners, must each endorse in order to negotiate the paper. (Chitty On Bills, 66, 67, 254, ed. of 1840.) It would seem consistently if not necessarily to follow from this doctrine, that their interests, though joint as to the remedies against them on the paper, are so far distinct and separate as it respects each other, that notice of the default of the maker should be given to both. In the ordinary case of a partnership the interest is not only ¡joint, but each member is a general agent of the concern; and hence notice to one is notice to all. But here no such agency exists, as is sufficiently shown from the fact that each party must act for himself in the negotiation of the note.
I do not see but the case of joint endorsers, not partners, stands on the same footing as that of joint makers of a note who are not .partners; and in respect to them it is settled that presentment must be made to each, in order to charge the endorser. The argument is about as strong both upon reason and analogy in favor of giving effect to a demand upon one of the co-makers, as it is in favor of giving effect to .a notice to one of the co-endorsers. The question has been very fully and satisfactorily examined by the supreme court of errors in Connecticut, and a decision made in conformity with these views. (Shepherd v. Hawley, 1 Conn. Rep. 367.)
The plaintiff failed to show that the estate of Johnson had been charged by notice of non-payment. If the notice relied on for that purpose had been sent to the proper place, no doubt it would have been sufficient, under the circumstances of this case, though directed to Johnson after his death. (Stewart v. Eden, 2 Caines, 121; The Merchant's Bank v. Birch, 17 John. 25.) (a). But the notice was sent to Little Falls,' instead of Salisbury where Johnson resided; and if there were, nothing *235 else in. the case, I think the failure to charge the estate by due notice, would operate a discharge of both endorsers. It clearly would if both were living, as a joint action could not, in such case, he sustained upon the note. And although the remedy at law survives against Green alone, yet as he is entitled to contribution from the estate of his co-endorser, it seems to me equally obligatory upon the holder to prove that both were charged, or rather that the estate of the deceased was charged, so as to secure the remedy over. Otherwise, the whole debt would fall upon the survivor. The question, however, is not without its difficulties, and it is unnecessary now to decide it.
I think enough was shown, within the doctrine of the case of Tebbetts v. Dowd, (23 Wend. 379,) to establish the fact, as against the defendant, that all the necessary steps had been taken by the holder to charge both endorsers. After the note fell due and had been placed in the hands of an attorney for collection, on being called upon for payment, the maker gave Green security for his liability upon this very note, and he has since collected a part of the money thus secured to he paid, thereby fully admitting his liability and consequently that the proper steps had been taken-to charge him as endorser. The moneys received by Green may not be quite sufficient to cover the whole amount of the note in question and the other liabilities for which security was taken; but unless he was duly charged, why take security at all as respects the note, and follow it up by receiving a considerable sum applicable to it? The money realized upon the security falls short only some $170 of covering the whole amount of the liabilities for which it was given, including the note. The case of Gunson v. Metz, (1 Barn. & Cress. 193,) is a strong authority upon this point. That was a suit by the endorsee against the drawer of' a bill of exchange. No notice of dishonor was proved, but, to supply the defect, the plaintiff proved that, after the bill fell due, the drawer entered into an agreement with oneKinnear, a prior endorsee, by which, after reciting that the drawer had endorsed and drawn various hills of exchange (one of them being the bill in question) which were then overdue, and which were or ought to be in the hands *236 of Kinnear, it was agreed by the latter that he would receive the moneys due upon said bills in weekly instalments, &c. Abbott, Ch. J. held, that the recital in the agreement was an acknowledgment by the defendant that he was in such á situation, as to be liable to pay the bill, and consequently that he had received notice of dishonor. This decision was afterwards confirmed by the K. B, In the case in hand the defendant admitted his liability, took security from the maker to indemnify him,, and has actually realized thereon most of the money which he •now refuses to apply.
Judgment for the plaintiff.

 See The Cayuga County Bank v. Bennett and others, executors &c., (post, p. 236.)