Mr. Chief Justice Shaeeey
delivered the opinion of the court.
There are two cases between the same parties, which have been submitted together, the same questions being involved. The suits were brought by the plaintiffs in error, on two promissory notes against Pinckard the maker, and Harrison as the indorser. There was a verdict against the maker, but the jury found in favor of the indorser.
The plaintiff introduced no proof of notice to the indorser, but relied on his subsequent promise, as sufficient to charge him., William A. Lake stated that the notes were left with him for collection; that at their maturity, Pinckard' promised to pay on them eighteen hundred dollars, in case he could be indulged twelve months to pay the balance, which indulgence was given with the consent of Harrison the indorser.' After the stay expired, the attorney informed Harrison that the money was not paid, and that he should bring suit against him in the United States court, as he would probably be able to get judgment sooner. Harrison objected to that, and begged the attorney to sue in the Warren circuit court, saying that he would obtain Pinckard’s consent to let a judgment by default go at the first term. Harrison went to see Pinckard, and soon afterwards returned with Pinckard’s assent, and distinctly promised that judgment by default should go against them. The attorney accordingly instituted suits in the» Warren circuit court. At the *69 next term of the court, whilst the court was calling the appearance docket, Harrison asked the attorney if the cases had been reached, whereupon the papers were called for, arid it was found that Pinekard had filed a plea, and thereupon the attorney and Harrison, went to Pinckard’s attorney, to whom Harrison stated the agreement with Lake. The attorney who had filed the plea, refused to withdraw it, and Harrison again said that he would see Pinekard, and have it withdrawn, but as Pinekard refused, the plea was not withdrawn, and the cases stood continued. The witness stated that Harrison never denied his liability, during the life-time of the notary, who had died since suit brought, and that the defendant was the same Harrison who was cashier of the Commercial and Railroad Bank when one of the notes was protested.. The attorney who filed the plea was also dead, but had been examined on a former trial, when he stated that he was not specially employed to file pleas in these cases, but being the general attorney for Pinekard, he did so to prevent judgment by default. He also stated that Harrison applied to him to withdraw the pleas, and to let judgment go by default, stating that he wished it to be done, but he did not do so in consequence of Pinckard’s refusal.
Bibby, a witness, proved that the notes remained in the bank during business hours of the day of their maturity, and that Maxy, as the notary of the bank, was in the habit of attending regularly to the business of the bank. That no provision was made for the payment of the notes at their maturity. This is the substance of the evidence, so far as it is material in the present controversy.
The plaintiff’s counsel moved for the following charges, amongst others, which the court refused to give; to wit: “ That if the indorser admitted his liability, knowing that notice had been given, the jury should find for the plaintiffs, or if they believed no notice was given, and, knowing that, he admitted his liability, then they must find for the plaintiffs, and that his knowledge of the fact, whether notice was or was not given, might be inferred by the jury, from his promise, and the attending circumstances, and did not require affirmative proof of such *70 knowledge. If they believed, from the evidence, that Harrison admitted his liability, such admission would be sufficient to charge him, in the absence of proof that legal notice was not given. If they believed that Harrison’s admissions and conduct amounted to a waiver of notice, then they should find for the plaintiffs. If he admitted or acknowledged his liability as indorser, hé would. be prima facie liable, and if was for the defendant to prove that there was no notice, and in the absence of such proof, the jury ought to find for the plaintiffs. ■ That if Harrison promised to pay the notes sued on, or acknowledged his liability, it dispenses with proof of actual notice on the part of the plaintiffs, and was sufficient to charge him, unless it also appeared that no legal notice was given; and that it was for the jury to say, under all the circumstances, whether the evidence amounted- to an admission of -liability, or a waiver of notice.”
In testing the correctness of these charges, we are necessarily led' to determine the effect of a subsequent promise to pay, by the indorser of a note or bill. That such a promise, made with a knowledge of the laches of the holder in giving notice, will bind the indorser, is admitted on all hands; but a difficulty sometimes arises in applying the rule. This question has recently undergone an investigation, which, if authority is entitled to any weight, must put it at rest. In. the case of Tebbitts v. Dowd, 23 Wendell, 379, this identical question was before the court, and Mr. Justice Cowen, with an ability and research unsurpassed, has laid bare- all the law on the subject, and furnished a criterion in applying it, which cannot be mistaken. Beyond this case, it i,s needless to go for authority. He has reviewed all the English and American cases, reaching back for more than a century, and by them, fully sustains himself, with the exception of three cases in some of the state courts, out of some scores referred to. In the English cases there seems.to be no exception. With the aid of his lucid classification of the cases, there can be no difficulty in perceiving, at a single glance, how the rule has worked, and should work, in fixing the liability of a promising indorser. Such a promise *71 is considered first, as a waiver, and secondly, as presumptive evidence. When it appears affirmatively, that the holder has been guilty of neglect, and has omitted to give the proper notice, then a subsequent promise operates as a waiver of regular notice. A difficulty may sometimes arise under this head, as to the proof that such promise was made by the indorser with a knowledge of his discharge. On this point there is some con-fliction in the authorities, some of them holding that, it is incumbent on the defendant, who has made such promise, to prove that the notice was irregular, and also, that he promised in ignorance of his exoneration, whilst others seem to incline to the opinion that it is incumbent on the plaintiff to prove that the promise was made with a knowledge of the irregularity in giving notice. We are not called on, however, to consider the force of this promise as a waiver, inasmuch as there is nothing in the record, either from the one side or the other, which shows an irregularity or omission in giving notice; there is an entire absence of proof on this subject, except what is derived from the promise, for on this alone, the plaintiffs relied. We are to consider of the promise under the second head, made by the learned judge; to wit: as presumptive evidence, for under this head alone, is it embraced by the charges asked of the court. The plaintiffs sought to use the promise as a medium through which the jury might infer that due notice had been given. Judge Cowen says, that under such a state of case, he regards the law as being well settled, that it is competent for the plaintiff to prove a promise or admission, and to ask the jury to infer from it both demand and notice, and that as a matter of evidence, it is sufficient to authorize such an inference. Indeed he shows from authority, that every diversity of fact necessary to charge an indorser, has been inferred from such a promise. It has even been held sufficient to justify the inference, that there were no funds in the hands of the drawer of a bill of exchange. Common experience teaches us that men are not apt to .promise payment unless they know they are liable to pay, and when such a promise is given, it affords the fairest presumption of legal liability. As a matter of presumptive *72 evidence, a promise to pay was held sufficient to charge an in-dorser in the case of Vaughan v. Fuller, 2 Strange, 1246, decided as early as 1746. The question seems to have been fully considered and settled in the same way in 1806, by Lord Ellen-borough, in the case of Lundie v. Robertson, 7 East, 231, which is now regarded as a leading case, and the authority of which has never been questioned. The court refused to charge in accordance with the principle as settled by these authorities, which, assuming that there was a promise of payment, was error.
That a promise or acknowledgment of liability was shown by the evidence, is a matter too clear to admit of dispute. When the indorser was first applied to, he consented that a year’s indulgence should be given. When the year expired, and he was threatened with a suit in the United States court, he begged to be sued in the circuit court of Warren county, and promised that if the suit was so brought, the plaintiff should have a judgment by default, at the return term. At that term he even requested the attorney of Pinekard to withdraw the plea and let the plaintiff have a judgment by default, and stated that this was the agreement between himself and the plaintiff’s attorney, and he wished it to be consummated. Surely a promise to let a judgment go by default, under the circumstances, was equivalent to the most unqualified promise of payment. Nay, it was more; it was a full admission that the defendant had no defence whatever to make.
There are other circumstances in this case, which would be entitled to much weight if it were necessary to notice them. The notary, it seems, died after suit brought, and before trial, and in such cases it is competent to resort to secondary evidence. This may account for the inability of the plaintiff to prove notice, and furnish a reason why no such proof was attempted. Under such circumstances it is peculiarly proper to open the door for the admission of presumptive evidence, and the promises of the defendant were sufficient to raise the strongest presumptions against him. That this presumptive evidence, like all other evidence of that character, may be *73 rebutted, is clear enough. It is not conclusive. The defendant may relieve himself by showing that no demand, was made; or if he can, that no notice was in fact given. If he can do this, then the question will arise, whether the promise does not amount to a waiver.
A technical objection is taken that the bill of exceptions was not signed at the proper time, or pending the trial. This might be available, but the bill of exceptions also shows that the plaintiffs moved for a new trial, and that the exceptions were taken to the overruling of the motion. This brings it within the provision of the statute which authorizes the taking of exceptions to the overruling of such a motion, which of course cannot be done until the trial is concluded and the motion decided.
The judgment must be reversed'and the cause remanded.