BRADBURY, J.
There is no conflict in the evidence relating to any material fact in this case. The petition avers that the plaintiff in error had purchased the note, which is the subject of controversy between the parties hereto, in due course of business before it became due. This, it is true, the answer of the defendant in error denies, but the cashier of the plaintiff in error, G. B. Harman, states directly and unequivocally in his deposition, that his bank purchased the paper of the payee, S. J. Patterson, on August 20, 1888, five days after its date, at a discount of seven per cent.; that the discount amounted to $5.07, all which he says is shown by the books of the bank. Mr. Eichelbérger, book-keeper for Mr. Patterson, is equally explicit. No attempt is made by the cross-examination or otherwise, to cast a suspicion upon, or to discredit these two witnesses, or impeach the correctness of the books of the bank; nor is any evidence adduced that in the slightest degree contradicts their statements. Under these circumstances it cannot be presumed, even to support the judgment rendered, that the court of common pleas found this evidence to be false and totally disregarded it in making up its judgment.
The real contention between the parties was whether Patterson, the endorser of the promissory note, had been discharged from liability to the plaintiff in error by reason of the negligence of the defendant in error. The note had been transmitted to defendent in error for collection and was not paid at maturity. If defendant in error, by its negligence, had discharged the endorser, then it should be held liable for the damages it thereby caused; but if, notwithstanding this alleged negligence, Patterson remained liable, it should be exonerated, for all the duty it owed to the plaintiff in error, in case the note was not paid, was to take such action as would charge the endorser.
When the note matured the defendant in error notified the makers and one of them came to its banking house. A *359 plain and simple duty then confronted the defendant in error; either to require payment of the note, or in default thereof, to take such action, as by the law merchant, was necessary to charge the endorser. It did neither. That the note was conditionally paid, is suggested; what that may mean in this connection is not clear. No doubt, that, as between the holder and the maker of a promisory note, a conditional payment may be made; but the rules of the commercial law require a holder, who intends to hold an endorser liable, to give notice to the latter of the default of the maker. Anything less than a full and absolute payment is a default, for nothing less than that measures the duty of the maker. In this case, however, there was no conditional payment made. True, the defendant in error had in its hands the means of enforcing .payment but did nothing; it simply accepted the maker’s' promise that, if Patterson did not give further time, they would pay the note. If the defendant in error had given notice to the plaintiff in error of the default of the maker, it would have discharged its duty, for it would have afforded the latter an opportunity to give notice to Patterson. Lawson et al. v. Bank, 1 Ohio St. 206.
Where, however, a holder of a promissory note passes by an immediate endorser, and serves notice of non-payment upon one more remote, he cannot avail himself of the time the immediate endorser would have had to serve the remote one, if the holder had given notice to the former; but the holder in that case must give notice to the remote endorser within the same time that he is required to give it to the immediate endorser. 1 Parsons on N. & B. 514; Dobree v. Eastwood, 3 Car. & P. 250; Simpson v. Turney, 5 Hump. 419; Rowe v. Tipper, 13 C. B. 249; Marsh v. Maxwell, 2 Camp. 210. Therefore, if the letter of Fulton & Peters, had been sufficient in form and substance to fix the liability of Patterson, it was mailed too late, and for that reason he was discharged.
This release of Patterson was an-accomplished fact before the makers of the note applied to him to extend the time of payment. The omission of the bank to require payment, or in default therof to give the necessary notice to charge *360 Patterson was caused by tlie solicitations of the makers, Fulton & Peters. The most careful scrutiny of the record fails to disclose that Patterson, up to this time, said or did anything' to mislead the bank or to induce it to relax its •vigilence, or omit any step necessary in law to charge him as endorser.
Patterson, therefore, had a perfect defense against any .action to charge him as an endorser, unless, by his subsequent conduct, he has forfeited his right to set up this discharge.
A subsequent promise to pay, when made with full ^knowledge of the facts, has been held to be evidence of a •demand and notipe, or to imply a previous waiver thereof. Myers et al. v. Standart et al, 11 Ohio St. 29; Hibbard v. Russell, 16 N. H. 410; Robbins et al. v. Pinckard et al., 5 Sm. & M. (Miss.) 51; Lewis et al. v. Brehme, 33 Md. 412; McPhetres v. Plalley's Executor, 82 Me. 72; Mense v. Osbern, 5 Mo. 544; Loose v. Loose, 36 Penn. St. 538; Kilby v. Rochussen, 18 C. B. (N. S.) 357.
In the case under consideration, however, no promise to pay was made by Patterson, unless the following letter written by him to Fulton & Peters in reply to theirs of the 19th of October, asking for an extension of the time of payment can be construed into such promise:
Dayton, O., October 20, 1887.
'“Messrs. Fueton & Peters, Wilmington, Ohio.
“Gentlemen: — -Yours of 19th at hand, and we have instructed our bank (to whom the note belongs, we having-discounted same) to grant extension to October 25th. Please honor it at that time, and much oblige,
“Yours truly,
“S. J. PATTERSON.”
If this letter should be construed to contain an implied promise to pay the note, yet as it was written without any knowledge on the part of the writer that he had been discharged from liability it does hot fall within the principles upon which a subsequent promise to pay has been held to bind an indorser. Tibbetts et al. v. Dowd, 23 Wendell, 379.
*361 Is Patterson estopped to set up bis discharge by reason of his letter of the 20th of October, 1888, granting an extension to the makers of the note?
It is true that the defendant in error could have passed by the plaintiff in error, and given notice of the maker’s default directly to the endorser, Patterson, and thus fixed the latter’s liability; this the defendant in error also failed to do. It is suggested that this failure was on account'of ignorance of the residence or address of Patterson. If this, was true it constitutes ho excuse; for (1.) the defendant in error, in that contingency, not being able to discharge its-duty in any other way than by a notice to the plaintiff in error was bound the more strongly to notify the latter.. And (2.) the means of knowledge were at hand. Fulton, one of the makers of the note, was at the bank, and announced his intention to write to Patterson to obtain an extension of the time of payment. It was apparant from the conversation that he had with the officers of defendant in error, that he knew Patterson’s address, and an enquiry of him would have enlightened those officers, but the en-quiry was not made.
The makers of the note, Fulton and Peters, in fact wrote to Patterson for an extension in the following terms:
“Wiemington, O., October 19, 1887.
“Me. S. J. Patterson, Dayton, O.
“Dear Sir — We wish you would advise the Clinton County Bank to hold our note until November 5th, or if you cannot do that, anyhow until the 25th inst. We cannot possibly meet it until at least that time, and oblige,
“Yours,
“Fueton & Peters.”
This is the only notice that Patterson received.
Whether a notice of the non-payment of a promissory note, given by the maker to the endorser, is sufficient to fix the liability of the latter has not been determined by this court. The authorities upon the question are in conflict. The cases of Johnson v. Harth, 1 Bail. (S. Car.) 482; Rosher v. Kieran, 4 Camp. 87; and Chitty on Bills, 495,. *362 note u, with, some other authorities, seem to support the doctrine of the sufficiency of such notice, while the following cases deny it. Stanton et al. v. Blossom et al., 14 Mass. 116; Tindal et. al. v. Brown, 1 D. & E. 167, per WiRKES’ opinion 169, and Buller, J., 170; Stewart v. Kennett, 2 Camp. 177. Nor is the determination of this queston necessary now; for if a notice given by- the maker to an endorser should be held sufficient to charge the latter, yet this letter of the maker, is faulty in that it neither states that any demand of payment had been made, that the note had been forwarded to and was at the place of payment, or that it was due. If the court should go to the extent of holding that the endorser is bound to carry in his memory the due date of a note that he endorses, and must presume that its payment has been demanded at the proper time and place, all which is necessary to make this letter sufficient notice, was due diligence shown in giving the notice? The last day of grace was October 17, and the letter was not written until the 19, two days later. To constitute due diligence it should have been deposited in the post office in time to have departed in the earliest mail to the residence of Patterson that departed after business hours on the 18. Lawson et al. v. Bank, 1 Ohio St. 206. It is true that if the defendant in error had chosen to give notice of non-payment to the plaintiff in error, that the plaintiff in error would have had one day after it received notice within which to give notice to Patterson, and in that case a notice given to the plaintiff in error to Patterson on the 19th of October would have been in time. 1 Par. on N. & B. 513; Lawson et. al v. Bank, 1 Ohio St. 206.
On October 17, 1888, the day the note matured, one of the makers, Fulton, was called into the bank and his attention directed to it; the makers then had funds in the bank which could have been applied to its payment, but upon Mr. Fulton’s representation, that his firm was pressed for means it was induced to indulge them until they could apply to Patterson for a short extension of the time of payment, promising to pay it if Patterson refused to extend the time. After two day’s delay, they wrote the letter of October 19, to which they received, in answer, Patterson’s letter of the 20, grant *363 ing the favor, of which the bank was at once advised; it thereupon continued to receive and pay out for the makers large sums of money until November 1, 1888, on which day the makers assigned their property in trust for their creditors, having assets sufficient to pay only a few .cents on the dollar of their indebtedness. No doubt, but for this letter of Patterson’s, the bank would have charged this note against the maker’s deposits, and in that way secured its payment.
If Patterson had been informed of these facts, and chose to grant an extension to the makers, and the bank relying thereon had paid out all the funds of the makers before the assignment was made and thus lost its means of indemnity, he should be held to abide the consequences. But he had no such knowledge. He neither knew that he had been discharged by the bank’s neglect, nor that the bank had indemnity within its control. His granting the extension was an innocent act in itself, and he should not be charged with consequences that he had no reason to suspect would flow from it. On the contrary, the bank, defendant in error, was an actor in the entire transaction. With means of payment in its hands it chose to indulge the makers in direct violation of its duty to the plaintiff in error. ' It knew this-indulgence was granted to the makers of the note, expressly, to enable them to apply for an extension of payment to one, who, upon the face of the paper was only liable in case it did the very duty that it must of necessity violate to grant, the indulgence. And when the letter from Patterson was. made known to it, and it proceeded to act upon the extension granted, it had no reason to believe that he had granted the extension with knowledge of the facts, and it took no action to advise him of their existence.
Under these circumstances, the defendant in error must be held to have assumed the risks that naturally flowed from its actions, one of which was that Patterson might avail himself of a defense thus afforded to him by its own negligence. As upon the undisputed facts the judgment should have been for the plaintiff in error, it becomes unnecessary to consider the other questions that arise upon the record.

Judgment reversed and cause remanded for further proceedings.